# Standard Life & Accident Insurance Co. *v.* Jones.

*Action on Policy of Insurance against Accidental Injuries.*

1. *Insurance against accidental injuries or death; exception in case of want of due care or negligence.*—Where a policy of insurance against accidental injuries or death contains a condition, that the insured shall at all times "use due care and diligence for his personal safety and protection," and a plea to an action on it avers that he failed to do so, "but contributed directly and proximately to his own injury and death, by getting off an engine in motion in the night time, with his back towards the direction in which said engine was going, which was an unsafe and dangerous way of alighting from it; "*held,* that a replication alleging "that said insured was a railroad switchman, was insured as such, and met the accident which caused his death while in the discharge of his customary duties as such switchman," was demurrable and insufficient, be-

[Standard Life & Accident Insurance Co. v. Jones.]

cause, though the policy covered injuries resulting from the dangers incident to the service, it did not cover injuries resulting from negligence or want of due care in the performance of customary duties.

2. *Same; exception as to acts violative of employer's rules.*—If the policy contains an exception as to injuries resulting from a violation of the employer's rules, the insured being presumed to have knowledge of them, it is not necessary for the defendant to prove his knowledge of them; but evidence as to the rules is not admissible, unless the exception is especially pleaded.  -

3. *Same; exception as to injuries resulting from intoxication, or received while under the influence of intoxicating liquors.*—If there is an inconsistency between the terms of the application for the policy and the policy itself, excepting injuries resulting from intoxication, or received while under the influence of intoxicants, the policy must control; but, where the application uses the words, "any accidental injury which may happen to me while under the influence of intoxicating drinks, or in consequence of having been under their influence," and the policy excepts injuries "happening to the insured while intoxicated, or in consequence of having been under the influence of any intoxicating drink," there is no material difference between the two; and it is not necessary, in order to make out the defense, that the intoxication should have contributed to the injury.

APPEAL from the City Court of Montgomery.

Tried before the HON. THOS. M. ARRINGTON.

Action on a policy issued by the defendant corporation, insuring one Albert Hutchinson against "the effect of injury to his body caused by external, violent and accidental means," brought by Jane Jones, the beneficiary named in the policy, on account of the death of the insured, during the period covered by the policy, while in the discharge of his duties as a switchman on the L. & N. Railroad. The pleadings, and some of the material stipulations of the policy, are stated in the opinion of the court. The policy contained, also, "an express condition, that the insured shall at all times use due care and diligence for his personal safety and protection;" and the complaint alleged that he used such care and diligence. The policy contained, also, an exception of injuries resulting directly or indirectly, in whole or in part, "from violation of law, or of the rules of any company or corporation." The evidence adduced on the trial showed that the deceased, while in the discharge of his duties, attempting to descend from an engine while in motion, for the purpose of *throwing* a switch, in obedience to an order or signal of the engineer, fell between the engine and tender, was run over and instantly killed, and that he descended from the engine backwards—that is, with his back in the direction in which the engine was moving. The defendant offered in evidence a rule of the railroad company forbidding that mode of descending from an engine in motion, and prescribing the man-

ner in which it should be done; and excepted to the exclusion of this evidence. The defendant introduced, also, evidence tending to show that the deceased was, at the time of the accident, intoxicated, or at least under the influence of liquor, manifested by his being more talkative and profane than usual; that a witness saw a small flask of liquor in his breast pocket, but did not see him take a drink from it; and that the broken flask was found on his person after death, and the smell of whiskey was then perceptible, though the witness had not before noticed it.

On this evidence, the defendant asked the following charges in writing, and duly excepted to their refusal: (1.) "If the jury believe from the evidence that Hutchinson, the insured, at the time of his injury and death, was under the influence of whiskey, whether intoxicated or not, then the plaintiff can not recover." (2) "It was the duty of said Hutchinson to exercise a greater degree of care in getting off a moving engine at night, than is necessary by day." (3) "The policy sued on does not cover any accident or injury to said Hutchinson happening while he was under the influence of liquor." (4) "If the jury believe from the evidence that, at the time of the accident and injury to said Hutchinson, he was in any way under the influence of liquor, then the plaintiff is not entitled to recover, even if they should find that his being under the influence of liquor had nothing to do with causing his death." (5) "If the jury believe the evidence, they must find for the defendant.'

The rulings on the pleadings and evidence, and the refusal of the charges asked, are assigned as error.

FALKNER & JONES, for appellant, cited 1 Amer. & Eng. Encyc. Law. 91; 3 Biss. C. C. 399; 134 Mass. 175; 56 Iowa, 664; 37 Amer. Rep. 710, notes.

SAYRE & PEARSON, contra, cited Nat. Benefit Asso. v. Jackson, 13 Amer. & Eng. Corp. Cases, 597; 1 Amer. & Eng. Encyc. Law, 92; 27 Mo. App. 170; 25 Kan. 188; 2 Amer. & Eng. R. R. Cases, 127; Propst v. Railroad Co., 83 Ala. 527; Petty v. Dill, 53 Ala. 645; Trammell v. Hudmon, 56 Ala. 237; 5 N. Y. S. C. 643; s. c., 5 Big. L. & A. Insurance Cases, 333; 35 Ala, 96; 29 Ala. 200; 27 Ala. 592.

McCLELLAN, J.—This action is prosecuted by Jane Jones—appellee here—upon a contract enuring to her benefit, whereby the defendant—appellant here—insured Albert Hutchinson against death by accident. The complaint

[Standard Life & Accident Insurance Co. v. Jones.]

alleged the contract in substance, and that the insured came to his death, while the policy was in force, "by external, violent and accidental means." The policy was issued upon a written application of Hutchinson, in which is made this statement: "My habits of life are correct and temperate, and I understand and agree that the policy to be issued on this application will not cover any accidental injury which may happen to me, either while under the influence of narcotics or intoxicating drinks, or in consequence of having been under the influence of either ;" and in the policy itself is incorporated the following stipulation : "This insurance does not cover . . . . death or disablement happening to the insured while intoxicated, or in consequence of his having been under the influence of any narcotic, or intoxicating drink whatsoever." It is also an expressed condition of the policy, that the insured should at all times use due care and diligence for his personal safety and protection. Upon these stipulations, the defendant interposed several special pleas to the effect, (1) that at the time of the alleged injury the insured was intoxicated; (2) that he was under the influence of whiskey ; (3) that said injury happened in consequence of the insured having been under the influence of whiskey, and (4) that at the time in question the insured "failed to use due care and diligence for his personal safety and protection, but contributed directly and proximately to his own injury and death, by getting off an engine in motion in the night time, with his back towards the direction in which said engine was going, which was an unsafe and dangerous way of alighting from said engine." Plaintiff's demurrers to these pleas having been severally overruled, she joined issue on the first three of the series, and replied to the 4th plea as follows : "To the 4th plea the plaintiff says, that the insured was a railroad switchman, was insured as such, and met the accident which caused his death while in the discharge of his customary duties as such switchman." The action of the trial court in overruling defendant's demurrer to this replication constitutes the subject matter of the first assignment of error.

1. In our opinion, this action was erroneous. The stipulation set up by this 4th plea was in the nature of an exception in favor of the insurer. It was not necessary that the complaint should have negatived the facts which brought the defendant within the exception. Their existence was a matter of affirmative defense, and the *onus* both of averment and proof of them rested on the defendant.—*Freeman v. Traveller's Ins. Co.*, 144 Mass. 572 ; *Cronklite v. Traveller's Ins. Co.*, 75 Wis. 116 ; s. c., 17 Am. St. Rep. 184. This *onus,*

so far as averment is concerned, was discharged by the interposition of the plea in question, which alleges facts involving the absence of that care and caution on the part of the insured which were, by the terms of a policy, a condition to defendant's liability. The replication to this plea does not deny that the insured failed to use due care and caution for his own safety and protection; it affirms merely that he was insured as a switchman, and that the accident which caused his death occurred while he was in the discharge of his customary duties as such. The replication assumes that the policy covers all injuries received while the insured was in the performance of the duties of his occupation, wholly regardless of the manner of such performance, as being with the exercise of due care, or in a careless and negligent manner. It assumes, in effect, that there could be but one possible mode in which the insured's customary duties might be performed, and that the adoption of that mode by him involved, of necessity, the observance of the care required by the policy for his personal safety. It proceeds on the idea that, if the act being done by the insured at the time of the injury was within the scope of his employment, and one which it was his duty to perform, it is immaterial whether he used care to avoid the dangers incident to it, or was wholly wanting in respect of the exercise of diligence and prudence in conservation of his personal safety. The theory of the replication is manifestly unsound. The policy has a broad field of operation without extending its application to injuries received in consequence of negligence on the part of the insured. The duties of a switchman, even when performed with the utmost care, are attended with many perils; the employment in itself, and without reference to additional dangers resulting from the negligence of the employé, is a hazardous one. The policy sued on was intended to cover the inherent dangers of the occupation, dangers which the exercise of due care could not eliminate from it, and not dangers which arise, not from the occupation itself, but from the negligent manner in which its duties are discharged. And while, as alleged in the replication, Hutchinson was insured as a switchman, and was injured while discharging the customary duties of that position, it may be that he was negligent in the manner of his performance of those duties; that that negligence was the cause of, or contributed to his injury, and, of consequence, that, in admitting the truth of the replication, every fact laid in the plea might also be true, and, if true, afford a full answer to the complaint. This test demonstrates the insufficiency of the replication, and the error

[Standard Life & Accident Insurance Co. v. Jones.]

of the trial court in overruling the demurrer thereto.—*Tuttle v. Traveller's Ins. Co.*, 134 Mass. 175, and authorities there cited ; *Bon v. Ry. Pass. Asso. Co.*, 56 Iowa, 664 ; *Freeman v. Traveller's Ins. Co.*, 144 Mass. 572 ; *Tooley v. Ry. Pass. Asso. Co.*, 3 Biss. (C. C.) 399.

The case of *National Benefit Asso. v. Jackson*, 114 Ill. 533, is not opposed to the conclusion we have reached. No question was made in that case as to the *manner* in which the insured discharged the duty in the performance of which he was killed. The contention was that he voluntarily exposed himself to unnecessary danger, or, in other words, that he should not have attempted the act in question at all. The court held, on the facts, that the duty was embraced in his employment with reference to which the policy was issued, and that therefore the policy covered any injury received while attempting to discharge it, for aught that appeared in the case, in a careful and prudent manner. It is of no consequence in this connection that the complaint alleged due care and diligence on the part of the insured. Notwithstanding this, the action of the trial court forced the defendant to take issue on the replication, and thus to try the case upon inquiries as to facts which were not really controverted by the defendant, and upon which its rights in the premises did not depend.

It is to be observed with respect to this replication, that it *does not* allege that the insured was killed while in the discharge of a duty incident to his employment, *in the customary mode of performing that duty*, as counsel seem to insist, but only that he was performing a customary duty of the service, no account being taken and nothing alleged in respect of the manner in which the attempt was being made. Whether, therefore, had the averment been that he was discharging the duty in the mode and manner customary and usual in the service, the replication would have been good, is a question not presented for our consideration. But see *Warden v. L. & N. R. R. Co.*, 10 So. Rep. 276, *ante*, p. 277

2. It is the well settled doctrine of this court, that in actions by employés against railroad companies, sounding in damages for personal injuries, the plaintiff is not chargeable with negligence upon the mere fact that his conduct at the time of the infliction of the injury, and contributing to it, was violative of a rule of the employer, *unless knowledge* of the rule is brought home to him.—*Propst v. Railroad Co.*, 83 Ala. 527 ; *Geo. Pac. Ry. Co. v. Davis*, 92 Ala. 300 ; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241 ; s. c., 9 So. Rep. 271. This doctrine is, in part at least, rested on the

[Standard Life & Accident Insurance Co. v. Jones.]

consideration, that it is the duty of the employer to inform the employè of the rules adopted for his guidance in the service he has undertaken to perform, and in the nature of things it would be unjust and wrong to hold the servant responsible for the violation of a rule of which he knew nothing, and his ignorance of which is due to the dereliction of the master. This rule does not obtain between passengers and common carriers, because, in a measure, of the absence of this element of duty, and probably also because of the impracticability of instructing each passenger as to the rules made for his observance while the relation exists; and the passenger must therefore acquaint himself with these rules, and comply with them, or fail therein at his own peril. This principle, in our opinion, obtains between the insurer and the insured in a case like this, where the insurance is effected with reference to a particular employment, and the policy contains a stipulation that it shall not cover any injury resulting from the violation of the rules of the employer. The insurer can not know the rules which the employer has adopted for the government of the employè—it may be, indeed, that the insurer does not know who the employer is; and there can be no duty resting on the insurance company to instruct the insured as to the rules of the service in which he is engaged. On the other hand, it is not only entirely practicable for the employè to inform himself in this respect, but it is, certainly as between him and the insurer, his duty to do so. He undertakes to conform to rules made for his protection, the terms of which the insurer is not, and can not be advised of, but which he can and should acquaint himself with, as a condition to availing himself of the benefits of the policy; and he must be held to have discharged this duty, and to have informed himself of their existence and terms, so that when he is injured in consequence of conduct violative of an existing rule applicable to him and the service he is rendering, it is wholly immaterial whether in point of fact he knew of the rule or not.— *Tooley v. Railway Pass. Asso. Co.*, 4 Life & Acc. Ins. Reps., 34: s. c., 3 Bissell (C. C.) 399.

But this exception to the insurer's liability was also a matter of affirmative defense, and under the principle stated, and the authorities cited above, should have been specially pleaded before it could be availed of by the defendant. In the absence of such plea, it was not error for the court to exclude the evidence offered to establish the existence of the rule which it was proposed to show had been violated by the insured, in such sort that the violation contributed to his death.

The action of the trial court in refusing certain charges requested by the defendant depends for justification upon a construction of the application for insurance and the policy in respect of the exception to liability growing out of the use of intoxicants by the insured. It will be noted that there is this difference in the language used in the application and policy respectively in this connection: in the former, the exception is rested on the fact of the insured being *under the influence* of intoxicating drinks, while in the latter it is based on the fact of the insured being *intoxicated.* In common parlance, and hence as addressed to a jury, these two expressions mean different conditions. To be under the influence of whiskey, is not necessarily to be intoxicated. One may well be said to be under the influence of strong drink when he is to any extent affected by it—when he feels it; and this condition may result from potations so small as not to impair any mental or physical faculty, and when the passions are not visibly excited, nor the judgment or any physical function impaired. This is very far short of intoxication, which is the synonym of inebriety, drunkenness, implying or evidenced by undue and abnormal excitation of the passions or feelings, or the impairment of the capacity to think and act correctly and efficiently. If the terms are to be accorded these definitions as employed in the application and policy respectively, it is manifest there is a repugnance between the two; and in such case, the stipulation in the body of the policy would, we apprehend, control as against the undertaking set forth in the application, since the policy is the later expression of the minds of the parties, and, indeed, in a sense the only expression of those matters upon which their minds have finally met, except in so far as the statements of the application are made part of the policy by reference.

But the phrase "under the influence of intoxicating drinks," as used in policies of this character and in this connection, has a legal significance, differing from the popular one, and implying such influence as in reality amounts to intoxication. In a well considered case, it was said by the Supreme Court of New York, that "to be under the influence of intoxicating liquors, within the meaning of this policy, the insured must have drunk enough to disturb the action of the physical or mental faculties, so that they are no longer in their natural or normal condition. When, therefore, the defendant imposed upon persons insured by it the condition that it would not be liable when death or injury should happen while the insured was under the influence of liquor, the intention manifestly was to require the insured to limit its use in such a degree as

that he retained full control over his faculties of mind and body. While he did so, the company was reasonably secure against the insured exposing himself unnecessarily to dangers from his own acts, or the acts of others produced by his own irritating or offensive conduct or language;" or, we may add, as applicable to the present case, produced by his failure or inability to conserve his own safety, consequent upon the influence exerted by the liquor to the impairment of his faculties.—*Sharler v. Railway Assurance Co.*, 5 Life & Acc. Ins. Reps. 331; s. c., 5 Thomp. & C. 643. It is clear that, giving to the words, "under the influence of intoxicating drinks," the meaning accorded them by the case quoted from, and which we think is eminently sound, they import nothing more or less than intoxication, and, hence, that there is no inconsistency from the point of view of the law between the application and the policy itself in this respect: they each and both rest the exception in question upon the intoxication of the insured at the time of the accident.

It follows that charges 1, 3 and 4 asked by the defendant, were properly refused. They are either misleading, in that they rest defendant's immunity from liability on the mere fact that the insured was under the influence of liquor, which the jury would probably have understood to mean a condition not amounting to inebriety, or affirmatively bad, in that they would have authorized a verdict for defendant under this exception, notwithstanding the jury might have found that the insured was not intoxicated at the time the injury was sustained.

We entertain no doubt but that it was competent for the parties, by appropriate stipulations, to take out of the field of inquiry and controversy, in the event a claim should be advanced for an injury alleged to be within the policy, the question whether the intoxication of the insured did in fact contribute to the injury, and to provide that the policy should not cover any injury sustained while the insured was in that condition, irrespective of any agency the fact of intoxication may or may not have had in the production of the result complained of. There can be no doubt either that this policy contains such a provision. It stipulates, as we have seen, that it shall not cover any accidental injury which may happen to the insured *while* (*not* in consequence of being) intoxicated; and serving to emphasize the purpose to exclude injuries suffered while the insured was under the influence of drink, whether that fact contributed to the result or not, it is provided further, in the same sentence, that the exclusion shall apply also to injuries suffered *in consequence* of the insured

[Ala. Midland Railway Co. v. Newton.]

having previously been under the influence of liquor, though not so at the time of the accident,—a causal connection between the condition of the insured and the catastrophe being necessary in the latter case, and not essential in the former, to bring the injury within this exception to the insurer's liability.—*Sharler v. Railway Pass. Ass. Co.*, 5 Life & Acc. Ins. Rep. 335. The charges referred to above were not, therefore, open to the objection made to them on the theory that the intoxication which would bring the case within the exception must have contributed to the injury.

Charge 2 requested by the defendant is argumentative, and tends to confuse or mislead the jury, if indeed it is not erroneous. The court properly refused to give it.

There was conflicting evidence, or conflicting inferences deducible from the evidence, on every issue of fact presented on the trial; and the court's action in refusing the general affirmative charge requested by the defendant was clearly right.

Reversed and remanded.