### CHARLES T. CUTTER *vs.* ALMON COOPER.

Suffolk. October 24, 1919. — January 6, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Interrogatories. Practice, Civil,* Interrogatories, Exceptions. *Evidence,* Competency, Relevancy and materiality.

The scope of the subjects relating to which interrogatories may be asked under the provisions of St. 1913, c. 815, is as broad as the field of inquiry that is open when the party interrogated is called as a witness to testify orally at the trial of the action, except for the limitation which may be imposed under § 3 of the act to the right of the interrogating party to be informed of the names of witnesses.

The provision of § 3 of St. 1913, c. 815, relating to interrogatories to parties, that "the court shall, upon motion, order the party interrogated to answer such of the interrogatories as it finds proper," does not vest in the judge an untrammelled discretion upon the subject, but imposes the duty to act according to sound principles of law, having regard to all pertinent factors and general rules of evidence.

Where a defendant has been aggrieved by and has alleged exceptions to an order of a judge of the Superior Court in an action at law refusing to order answered certain interrogatories propounded by the defendant to the plaintiff, the mere fact, that thereafter there is a trial of the action resulting in a verdict for the

plaintiff, does not deprive the defendant of his right to insist upon his exceptions and to have the order excepted to reviewed; and, unless it appears that the substantial rights of the defendant have not been injuriously affected, his exceptions will be sustained.

In determining whether certain interrogatories, propounded by a party in an action at law to an adverse party, shall be ordered to be answered, the principle of trial evidence, to the effect that ordinarily no exception will be sustained to the refusal to allow a question to be put unless the substance of the answer expected in reply is stated to the trial judge, does not apply.

Exceptions to refusals to order interrogatories, propounded by a party in an action at law to an adverse party, to be answered should not be sustained unless there is well grounded reason to believe that substantial injury has resulted to the excepting party.

The declaration in an action of tort was in two counts, the first containing allegations, without a specification of dates, that the defendant by unlawful influence persuaded the plaintiff's wife to leave the plaintiff, and the second charging the defendant with criminal conversation with the wife. The answer was a general denial and the statute of limitations. *Held,* that, upon these pleadings without the setting up of special matter in the answer, the defendant had a right under St. 1913, c. 815, to interrogate the plaintiff as to the fact, the times, and the duration of absences of the plaintiff's wife from the plaintiff and as to all the contributing causes flowing either from the conduct of the plaintiff or of the defendant and the measure of damages resulting to the plaintiff from those of such causes for which the defendant was responsible; and also relating to the actual state of the conjugal affections of the wife.

In the action described above, the defendant was entitled to have the plaintiff ordered to answer

(1) Interrogatories seeking information as to trips by the plaintiff to California after his marriage.

(2) Interrogatories seeking information as to the kind and extent of business in which the plaintiff was engaged during his married life, the amount of his property and income and the nature and sources of support available to his wife during his absences.

(3) Interrogatories seeking information as to the plaintiff's use of intoxicating liquor during a period material to the action and whether he was "many times under the influence of liquor." An answer to such an interrogatory does not come within the exception of St. 1913, c. 815, § 3, providing that "no party interrogated shall be obliged to answer a question . . . which would tend to criminate him."

(4) Interrogatories seeking to ascertain whether the plaintiff was faithful to his marriage vows, and as to his relations with women other than his wife.

(5) Interrogatories seeking to ascertain whether children were born of the plaintiff's marriage, and, if so, how many.

In the action above described, the following questions in interrogatories by the defendant to the plaintiff, "Did you ever have any venereal disease? If yes, when did you first know it?" "Were you treated professionally for any such disease and, if yes, by whom, and when and where?" were held properly not to have been ordered to be answered because, although the subject may have had a direct effect upon the connubial relation, the questions were incompetent in that the inquiry was not confined to the existence, continuance or mani-

festation of any effects of the disease during the period of marriage or to knowledge of any previous state of disease coming to the wife during marriage.

In the action above described, it was *held* that exceptions by the defendant to refusals to order the plaintiff to answer the following interrogatories must be overruled:

(1) An interrogatory, answer to which might have declared the names of the plaintiff's witnesses.

(2) An interrogatory asking if the plaintiff brought a libel for divorce against his wife on a certain date and obtained a decree of divorce, such matter relating to the contents of a public record respecting the time and place of which the defendant apparently had knowledge.

(3) Interrogatories containing general inquiries as to the health of the plaintiff and attendance upon him by physicians.

A judge of the Superior Court appended below his signature to the allowance of a bill of exceptions of a defendant to orders declining to order the plaintiff to answer certain interrogatories propounded under St. 1913, c. 815, a memorandum reading as follows: "In allowing this bill I rule that facts arising subsequent or appearing subsequent to the hearing are immaterial and I refused to permit such facts to be stated in this bill. Plaintiff's counsel excepted." *Held,* that such memorandum was not a bill of exceptions or a report and was not before this court, its presence in the record not being material.

TORT with a declaration in two counts, the first count being for the alleged alienation by the defendant of the affection of the plaintiff's wife and the second count being for criminal conversation by the defendant with the plaintiff's wife. Writ dated October 15, 1914.

In the Superior Court the defendant on November 17, 1917, propounded interrogatories in writing to the plaintiff, numbered from 1 to 86. The plaintiff on January 16, 1918, answered the first three of these interrogatories and declined to answer the others "upon advice of counsel under the present state of pleadings, unless ordered to by the court."

On January 31, 1918, the defendant moved for answers to interrogatories numbered 4 to 86 inclusive. The motion was heard by *Wait,* J., who on February 7, 1918, allowed the motion as to certain of the interrogatories, but declined to order the plaintiff to answer the following interrogatories:

"4. When and where did you last live with your wife Myra as husband and wife?

"5. Was there any child or were there any children of such marriage?

"6. After such marriage, did you go to California, and if so,

when, giving the date or dates as nearly as you can of going and returning and of each time if more than once.

"7. What did you go to California for?

"8. After your marriage and prior to going to California, what had been your business occupation, or occupations, if any, and where, stating in detail and giving business connections, names of associates, and any official business positions held by you.

"9. Were you in 1897 interested in a firm known as Charles T. Cutter and Company? If yes, who were the partners and what and where was the business, what capital did you contribute to the firm, if any and in what form?

"10. What became of this firm and when?

⌐ "11. Did you at any time work for P. B. Elkins of Brookline? If yes, when and in what kind of business and how long, and at what salary or rate of compensation?"

"13. In what business, if any, were you then [at the time you last lived with your wife] interested, and if in any business how and to what extent, and what actual money, if any, did you have invested in the same?

"14. At the time you went to California what property real and personal did you own and of what total cash value?

"15. At the time you went to California what income did you have of your own apart from what your wife may have given you?"

"18. What support did your wife have from you during the periods of such absences [during the months of September, October, November and December, 1908, and during the same months in 1909], and if any, state the amounts of money or other forms of support which she may have had from you, and how the same was delivered to her, and the amounts and quantities and date or dates, of delivery to her, as nearly as you can now state them.

"19. While you were absent from Massachusetts did you send your wife any money, and, if yes, what amounts, in as much detail as you can state it."

"27. Did Dr. Cooper ever treat you professionally? If yes, how often and when and where and what for, stating it in all possible detail.

"28. Did you ever have any venereal disease? If yes, when did you first know it?

"29. Were you treated professionally for any such disease and, if yes, by whom, and when and where?"

"31. If [you have] not [read your declaration as filed in this case] will you do so?

"32. Have you now done so?

"33. Did you read it before it was filed? Who drew it?

"34. Who gave him the information from which to draw it?"

"36. Where were you living at the time of such claimed desertion? Give street and number of the street and ownership or proprietorship of the building, if you know."

"38. If you say that your wife deserted you, state what support you were furnishing to her at or about the time thereof, and the form of such support and the amount or amounts in money or other forms."

"40. If you have answered the last interrogatory in the affirmative, [such interrogatory inquiring, 'Is it true that at any time when you were able, ready and willing to provide for your wife a suitable support and maintenance you asked her to live with you and she refused?'] state when it was and what your gross earnings or income were at the time per month or per year, and state the source or sources thereof in such detail as you are now able.

"41. Did you communicate with your wife after the time of such claimed desertion in any way, and, if so, when and how, in detail?

"42. Did you receive any moneys by check or otherwise from your wife Myra after the date when you say she deserted you, and, if yes, state when and what amounts in as much detail as possible. If you have answered that you did receive any such sums from Mrs. Cutter, state what they were for."

"44. What was your mother's name in full?

"45. Is she still living? If not, when did she die?

"46. Do you know of any payments of money by your wife Myra to your mother after your wife, as you claim, deserted you, and if yes, state what such payments were as fully as you are able.

"46a. Did your wife Myra advance any moneys to Charles T. Cutter and Company and, if yes, what amounts and when and what for? Were such advances ever repaid, and, if yes, when and how?

"47. It is true, is it not, that during the years 1903, 1904, and

1905 you were many times under the influence of liquor; if yes, state where and how often, as nearly as you can now give the places and times.

"48. Did you ever go to the bar at the Parker House in Boston, and, if yes, how many times in the years 1903 to 1909 inclusive?

"49. Did you ever go to the Hotel Haymarket in Boston, run by one Campbell? Were you ever there in a state of intoxication? When and how often?

"50. Do you, or did you at any time, know one Henry Goodwin, now or formerly of Wakefield?

"51. Do you, or did you at any time, know one Smith, a restaurant man of Wakefield?

"52. Did you ever attend any dance or dances at Lynnfield with either or both said Goodwin and Smith and, if yes, how many times and when?

"53. Between 1893 and 1906 did you personally have any physical ailment, sickness or disease, and, if so, what ailment, sickness or disease, and, if more than one, state all, in such detail as you are able.

"54. Between 1893 and 1906 did you consult any physician regarding your own health or physical condition in any respect other than as already answered in Answer 29?

"55. If you answer the last interrogatory in the affirmative, state what doctor or doctors you consulted and when and where, giving the names of the doctors in full and their places of residence or business.

"56. If you have answered that you did consult one or more doctors during the period inquired of, state for what cause or trouble you so consulted such medical advisers, and state, according to your best present knowledge and information, what physical ailment, sickness or disease you then had.

"57. Did you consult any other doctor or doctors than those already named, during the period inquired of, and if so, when and whom and for what, and in such detail as you are now able to state.

"58. Have you now answered all you can regarding your own ailments, complaints, sickness, or disease during the period between the years 1893 and 1906, and if not, will you now answer as fully as you are able?

"59. State where you have lived during the period 1904–1909,

both years inclusive, giving detail of the places in which you have lived, streets and numbers and the times of the several occupations, if more than one."

"67. If you have answered that you have no such direct personal knowledge [of the acts of Dr. Cooper as alleged in the second count of your declaration], and, if yes, what knowledge in detail, and when did you first get such knowledge and where? who, if anybody, has told you of such acts and what were you told and when for the first time?

"68. Did you ever communicate in any way, verbally or in writing, with the defendant, after your wife ceased to live with you, and if so, when and how, and if more than once, state the times and places and the manner of communication.

"69. What efforts did you make, if any, after your wife left you, to get her to return to you?

"70. Did you in 1909 bring a libel for divorce from your wife Myra, in Middlesex County, Massachusetts?

"71. Did you in November or December, 1909, obtain a decree of divorce in that suit?

"72. Had you from the time of your marriage to said Myra, up to the time of obtaining such decree, always been true and faithful to your marriage vows and obligations?

"73. Did you ever know a woman named E. A. Sears? If so, when?

"74. Who was she?

"75. Did you ever have any letter or letters from her?

"76. Where did she live? How, when and where did you make her acquaintance?

"77. Did you know any other woman in Marlborough, Massachusetts, and if so, whom, stating name, residence and occupation.

"78. What acquaintance did you have with her?

"79. Did you ever meet her in Boston?

"80. If yes, where and when, and what for?

"81. Did she ever ask you to meet her at any house on Isabelle Street or Isabella Street in Boston?

"82. Did you meet her there? If yes, when?

"83. Did you have her photograph, and if yes, when and how did you get it?

"84. Did you in the year 1906 buy a fur coat from Lamson and Hubbard in Boston, and, if yes, what did you do with it?

"85. What kind of a coat was it and what was the price?

"86. Have you ever paid for this coat?"

To the refusal to order the above interrogatories answered, the defendant excepted.

The action afterwards was tried by a jury and, on February 27, 1919, a verdict was returned for the plaintiff in the sum of $15,000. Thereafter the defendant alleged exceptions which related solely to the correctness of the order of the judge refusing to order answers to the interrogatories above set out. Appended to and after the signature of the judge to the allowance of the bill of exceptions was the following memorandum, also signed by the judge:

"In allowing this bill I rule that facts arising subsequent or appearing subsequent to the hearing are immaterial and I refused to permit such facts to be stated in this bill. Plaintiff's counsel excepted."

*F. Rackemann,* (*R. W. Dunbar* with him,) for the defendant.

*J. N. Johnson,* for the plaintiff.

RUGG, C. J. This case comes before us rightly on exceptions to the refusal by a judge of the Superior Court to order interrogatories to be answered. *Brooks* v. *Shaw,* 197 Mass. 376. The interrogatories were filed pursuant to St. 1913, c. 815. It is provided in § 1 of that act that "Any party, after the entry of an action at law or the filing of a bill in equity, may interrogate an adverse party for the discovery of facts and documents admissible in evidence at the trial of the case." By § 9 of the act §§ 57 to 67 both inclusive of R. L. c. 173, are repealed. The practice respecting interrogatories thus has been greatly broadened. There were important restrictions upon the right under earlier statutes. These are pointed out in *Wilson* v. *Webber,* 2 Gray, 558, and *Grebenstein* v. *Stone & Webster Engineering Corp.* 205 Mass. at page 431, and cases collected at page 439, and need not be repeated. Under St. 1913, c. 815, however, the scope of the subjects about which interrogatories may be asked is as broad as the field of inquiry when the person interrogated is called as a witness to testify orally in the actual trial. *Looney* v. *Saltonstall,* 212 Mass. 69, 74. The only qualification of this general statement is in § 3 of the act

and relates simply to disclosure of names of witnesses, as to which it is conceivable that in proper instances a party might be questioned if he became a witness at a trial. It is provided by § 3 of the act that "no party interrogated shall be obliged to answer a question or produce a document which would tend to criminate him or to disclose his title to any property the title whereof is not material to an issue in the proceeding in the course of which he is being interrogated, nor to disclose the names of witnesses," with exceptions not here material. It is elementary that a party called as a witness in a civil cause cannot be compelled to incriminate himself, *Evans* v. *O'Connor*, 174 Mass. 287, 290, 291, nor to give testimony not material to the issues on trial. The statute thus by express terms makes applicable to interrogatories fundamental rules applicable to the presentation of evidence. The words of § 3, that in the event of refusal to answer "the court shall, upon motion, order the party interrogated to answer such of the interrogatories as it finds proper," do not vest in the judge an untrammelled discretion upon the subject. They impose the duty to act according to sound principles of law, having regard to all pertinent factors and general rules of evidence.

The circumstance that there has been a trial at which the facts sought by the interrogatories might have been the subject of evidence is by itself no sufficient reason why a party may not have reviewed the decision of the judge in refusing to order answers to be made. It was said by Chief Justice Gray in *Baker* v. *Carpenter*, 127 Mass. 226, at page 228, "that the party, if he seasonably files proper interrogatories, is entitled to be informed of such facts in advance, so as to assist him in preparing for trial; that any error of the court, in refusing to order a disclosure of such facts, is not cured by the introduction of, or opportunity to introduce, testimony on the same point at the trial." *Gunn* v. *New York, New Haven, & Hartford Railroad*, 171 Mass. 417, 421. Whenever, therefore, the rulings of the judge have resulted in a denial of the right to secure disclosure of facts having a substantial relation to the issues involved, there is good ground for exception unless it appears that the substantial rights of the excepting party have not been injuriously affected.

The principle of trial evidence, to the effect that ordinarily no exception will be sustained to the refusal to allow a question to

be put unless the substance of the answer expected in reply is stated to the court, does not apply to interrogatories. Where questions are asked of a witness at the trial, if there has been proper preparation, counsel usually has more or less well grounded reason for anticipating the testimony to be given. Interrogatories commonly are propounded to an adversary party for the purpose of ascertaining material facts in advance of the trial. The interrogator may be in utter ignorance of the information likely to be disclosed, and be unable to make any offer of proof. His right to interrogate does not depend primarily upon the question whether the answers will help or harm him in the ultimate decision of the case. On the other hand, exceptions ought not to be sustained unless there is solid foundation for belief that substantial injury has resulted. Interrogatories should not be suffered to become a training field for the saving of exceptions possessing only a theoretical merit, having no relation to the practical administration of justice.

The plaintiff's declaration alleged in substance in the first count that the plaintiff's wife was persuaded to leave him through the intentionally unlawful influence of the defendant, and in the second count charged the defendant with criminal conversation with the plaintiff's wife. No date was alleged in the first count for the exercise of the acts there set forth. The defendant's answer was a general denial and the statute of limitation.

Under these pleadings issues were raised concerning the fact and the time and the duration of leaving the plaintiff by his wife, and all the contributing causes flowing either from the conduct of the plaintiff or of the defendant and the measure of damage resulting to the plaintiff from those causes for which the defendant was responsible. There was involved the actual state of the conjugal affections of the wife, because if a feeling of indifference or repugnance on her part toward the plaintiff preceded and accompanied the defendant's relations with her, there could be little or no recovery under the first count for simple alienation of affections. *Lanigan* v. *Lanigan*, 222 Mass. 198, 200. *Servis* v. *Servis*, 172 N. Y. 438. Even under the second count, where the essential injury alleged to the husband was the defilement of the marriage bed and the invasion of his exclusive right to marital intercourse with his wife, *Bigaouette* v. *Paulet*, 134 Mass. 123, 126, the real

attitude of mind of the wife toward the husband was important in its bearing on damages. *Palmer* v. *Crook,* 7 Gray, 418. *Hadley* v. *Heywood,* 121 Mass. 236.

It was not necessary for the defendant to set up special matter in his answer to raise all these issues. They were open under the general denial. Divorce Rule 9, as to specifications of defence, and the general practice upon libels for divorce as set forth in *Newman* v. *Newman,* 211 Mass. 508, 511, are not controlling in actions at law such as the present.

The propriety of the interrogatories must be tested in the light of these principles and issues.

It becomes necessary to examine in some detail the interrogatories propounded and not ordered to be answered.

A group of questions refers to trips to California by the plaintiff and the reasons therefor. These bore upon the conduct of the plaintiff toward his wife. If for long periods he absented himself from her without adequate cause, her feelings toward him may have been affected and his own indifference to her regard might be inferred. Interrogatories 6 and 7 are of this nature.

Adequacy of support of his wife by the plaintiff and the relation between his income and his expenditures in her behalf had a bearing upon their state of mind toward each other. This involved some inquiry into the kind and extent of business in which the plaintiff was engaged during his marriage, the amount of his property and income, and the nature and sources of support available to his wife during his absences. The interrogatories directed to these points should have been answered and include numbers 8, 9, 10, 11, 13, 14, 15, 18, 19, 38, 40, 42.

Questions 47 and 48 sought information respecting the plaintiff's use of intoxicating liquor and being under its influence during the years 1903 to 1909 inclusive. It requires no argument to demonstrate that this subject bore upon the relations of the husband and wife, and the state of their mutual affection and respect. Answers to these interrogatories did not tend to criminate the plaintiff. They did not relate directly to the crime of drunkenness. Whatever difficulties there may be in framing with precision a definition of the extent of inebriety which falls short of and which constitutes drunkenness, there is a distinction between that crime on the one hand and merely being under the influence of liquor on

the other hand, which is recognized in common speech, in ordinary experience, and in judicial decisions. *Freeburg* v. *State,* 92 Neb. 346. *Standard Life & Accident Ins. Co.* v. *Jones,* 94 Ala. 434. *St. Louis, Iron Mountain & Southern Railway* v. *Waters,* 105 Ark. 619. See *Commonwealth* v. *Whitney,* 11 Cush. 477, and *Gowey* v. *Gowey,* 191 Mass. 72. Moreover, a question is not incompetent merely because its answer may tend to criminate. That is a privilege which the person interrogated must claim. The plaintiff did not invoke protection on this ground as a ground for refusal to answer the interrogatories. *Commonwealth* v. *Shaw,* 4 Cush. 594. *McCooe* v. *Dighton, Somerset & Swansea Street Railway,* 173 Mass. 117.

Interrogatories 72 to 83 both inclusive were directed to the faithfulness of the plaintiff to his marriage vows and to his relations with other women. The measure of affection from his wife naturally would be tempered by undue attention on his part toward others of her sex while such an attitude of mind on his part would have a material effect upon the suffering likely to be endured by him through any intrusion by the defendant. While these were not so specific as to time as is desirable, they do not appear to be impertinent or too vague. It is inferable from their collocation and context that they all refer to a time subsequent to the marriage.

Whether there were any children of the plaintiff's marriage, and if so how many, was germane both upon the conduct of the plaintiff and his wife toward each other and their mutual obligations and the damages which the plaintiff might sustain through the wrong of the defendant. Therefore Interrogatory 5 should have been answered.

Numerous interrogatories were directed to the point whether the plaintiff ever had venereal disease. That subject manifestly may have direct effect upon the connubial relation. These interrogatories, however, were not so framed as to be competent. They were not confined in their scope to the existence, continuance or manifestation of any effects of the disease during the period of marriage, or to knowledge of any previous state of disease coming to the wife during marriage. If the time of such disease were wholly before the marriage, and it had been cured and no consequences were manifested during marriage and no knowledge of it came to the wife, then it had no bearing upon the issues here

raised. There was no error in not ordering these interrogatories answered because they were not in proper form or sufficiently definite in character to elicit discovery of material facts.

One obvious effect of an answer to Interrogatory 67 was or might be to disclose the names of the plaintiff's witnesses, and may not have been ordered answered on that ground.

Interrogatories 70 and 71 related to the contents of a public record respecting the time and place of which the interrogator apparently had knowledge.

A group of questions relates to the health of the plaintiff and attendance upon him by physicians. These general inquiries, at least without something more specific in the record, do not appear to be relevant to any pending issues. Mere ill health of a spouse alone affords no just ground for waning of affections and as matter of common experience does not usually produce that result.

It is not necessary to examine the other interrogatories one by one. The refusal to order them answered reveals no error. They were either irrelevant, unnecessarily indefinite and vague, or sufficiently covered by other interrogatories ordered to be answered.

It is manifest that discovery of the facts sought by the interrogatories, which it is here held should have been answered, would have been likely to be of material assistance to the defendant in the preparation for trial. Therefore upon this record the exceptions must be sustained.

There is inserted in the record a ruling of law signed by the judge, with a statement that the plaintiff's counsel excepted. There is no bill of exceptions or report covering that question of law. Hence plainly it is not before us and its presence in the record is immaterial.

*Exceptions sustained.*