ARTHUR E. GILMORE, JR. *vs.* JOHN B. HARTE, executor.[1] No. 96-P-683. September 2, 1997. *Will,* Allowance, Undue influence. *Practice, Civil,* Discovery.

Before his death on October 5, 1995, at the age of ninety-five, Martin Leo Coyne (the decedent) executed a will naming Mr. John B. Harte, the petitioner for probate of the document, as executor.

The will, signed on July 2, 1990, left the decedent's entire estate "to the then trustee of an Indenture of Trust," which was created at the same time. When the will (without the trust instrument) was offered for probate, the decedent's nephew Arthur E. Gilmore, Jr., pursuant to Probate Court Rule 16 (1987), see *Wimberly v. Jones*, 26 Mass. App. Ct. 944, 945 n.4 (1988), appeared in opposition to the allowance. He feared that the beneficiaries of the trust were two nurses who had unduly influenced his uncle in his last years. Two affidavits of objection were filed.

On the ground that the two affidavits did not satisfy the requirements of rule 16, the nominated executor of the estate filed a motion to strike the two affidavits and Gilmore's appearance. The judge permitted Gilmore to file further affidavits. A third affidavit was filed, and Gilmore asked for permission to take depositions of certain persons (e.g., the witnesses to the will signing) and requested documents (e.g., the trust instruments).

In sum, Gilmore's affidavits aver that he had been very close to the decedent and, together with his cousin, had overseen his living arrangements. A previously drawn but unexecuted will left Gilmore with an ample share of his uncle's estate. In 1988, the two cousins had enlisted the support of George Markle, the decedent's friend and long-time neighbor, to handle the decedent's financial affairs as he grew frail. While a petition for conservatorship had been prepared at that time, it was never filed. Instead, Markle was given a power of attorney so that he could pay routine bills and conserve the decedent's assets.

Beginning in August, 1988, after a fall in his home, the decedent became a permanent resident of a nursing home. There, Ann Russo and Natalie Flagg, registered nurses, became his principal caretakers. In December, 1988, about a year and one-half before the 1990 will was signed, Markle told

---

[1]Of the estate of Martin Leo Coyne.

Gilmore that Russo and Flagg "were taking large sums of money from [the decedent] in addition to being paid a weekly salary for caring for him." According to Gilmore's final affidavit, between 1986 and 1995, gifts to Flagg and Russo totalled $246,195.77.

Several statements in Gilmore's affidavits bear directly on the nurses' mastery over the decedent. Three months before the will was executed, Markle wrote to Gilmore, then residing in Florida, about their requests for more money — $2,000 each. Markle wrote him that he issued checks because of the decedent's insistence and Markle's fear that either one of them might "end up taking care of his money for him." He noted that the decedent seemed "flaky at times." By 1993, Gilmore, who had returned from Florida, began visiting the decedent. It appeared to him that the nurses exerted control over the decedent and would not allow him to visit alone in the same room.

At the hearing held after the filing of the third affidavit, Gilmore's counsel argued that both Markle and the hospital record keeper were stonewalling his attempts to comply with the judge's previous order allowing a more specific affidavit. The judge held that Gilmore's "materials are conclusory and do not evidence a lack of testamentary capacity or the exertion of undue influence, nor do they present sufficient basis for discovery of facts which, if proved, would establish [those two grounds] . . . at the time of the execution of the testator's will." For those reasons the judge struck Gilmore's appearance and allowed the petition to probate the will. Gilmore's appeal is before us.

The judge took the drastic step of dismissing Gilmore's objection after he filed his final affidavit (rather than allowing a full evidentiary hearing on the merits of his claim) because the judge concluded that *Wimberly* v. *Jones*, 26 Mass. App. Ct. at 946, mandated that result. He concluded that Gilmore failed to meet "the standards for the establishment of undue influence" as set forth in *Neill* v. *Bracket*, 234 Mass. 367, 369-370 (1920).

Assuming that the material outlined in the third affidavit is true, dismissal of the objection was tantamount to denying Gilmore a forum to question conduct that will contests are meant to adjudicate. See *Heinrich* v. *Silvernail*, 23 Mass. App. Ct. 218, 223 (1986). Our reading of the affidavits regarding undue influence indicates that the conduct of the nurses may amount to the kind of coercion that "subverts the sound judgment and genuine desire of the [decedent]." *Neill* v. *Bracket*, 234 Mass. at 369.

Gilmore's request for discovery would allow him, at the very least, to read the trust instrument, which may or may not include him as a beneficiary and may give him reason to depose others involved with the decedent at the time he executed the 1990 will. By analogy, we advert to the Fed.R.Civ.P. 30, which applies to depositions taken in an action pending trial. That rule provides a litigant an opportunity to obtain needed information. See *Hickman* v. *Taylor*, 329 U.S. 495, 506 (1947); 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2101 (2d ed. 1994). See also *Cutter* v. *Cooper*, 234 Mass. 307 (1920), advancing the proposition that "[w]henever . . . the rulings of a judge have resulted in a denial of the right to secure disclosure of facts having a substantial relation to the issues involved, there is good ground for exception unless it appears that the substantial rights of the excepting party have not been injuriously affected." *Id.* at 315. While the issue in *Cooper* arose before the modern codification of procedural rules and dealt with interrogatories, it is not an overextension of the law to apply the same standard to rule 16 depositions.

Cf. *Hobbs* v. *Carroll*, 34 Mass. App. Ct. 951, 952 (1993) (abuse of discretion where the contestant's amended affidavit of objections was barred after extended depositions; citing Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974), which "bespeaks liberality in allowing amendment of pleadings").

The sole issue presented by Gilmore's objections on this record seems to be whether the decedent made an unnatural disposition of his estate procured by improper conduct of the nurses. By foreclosing depositions in this case, the judge precluded Gilmore from substantiating claims outlined in the affidavits. Depositions on this limited subject would not constitute a "fishing expedition." See *Hickman* v. *Taylor*, 329 U.S. at 507. That principle is not necessarily infringed by allowing inquiry where the matters sought to be elicited have been sufficiently brought to the attention of the trier of fact through an affidavit, the substance of which has not been controverted.

The orders appealed from are reversed, Gilmore's appearance is restored, and he has thirty days from the date of the rescript in this case to take depositions.

*So ordered.*

*William C. Flanagan* for the plaintiff.
*Geoffrey A. Wilson* for the defendant.