EUGENE RUSS As Administrator of the Estate of FRED W. RUSS, Deceased, v. THE AMERICAN CEREAL COMPANY, Appellant.

ASSUMING RISK OF EMPLOYMENT: *Evidence.* Defendant, while employed in an elevator, fell through a trap door, over which he had to pass many times a day, receiving injuries resulting in his death. No one saw the accident, and decedent, before his death, was unable to tell how it happened. On beginning work, three weeks before the accident, decedent was told that the hinges on the door were loose and that it had slipped while S. was passing over it. The door and the appliances had been in the same condition for more than four months previous. It had been crossed many times by many other employes, and S. testified that he stood on the door five minutes before deceased fell, when it seemed to be all right. *Held*, that if the door slipped from its place, it was because of the unfastened hinges, which risk he had assumed; and, that since there was no evidence that its improper construction contributed to the accident, a verdict for plaintiff was error.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

THURSDAY, FEBRUARY 8, 1900.

ACTION to recover damages for the death of Fred W. Russ. Judgment for plaintiff. Defendant appeals.—*Reversed.*

*Hubbard, Dawley & Wheeler* for appellant.

*Chas. A. Clark & Son* for appellee.

SHERWIN, J.—The deceased, Fred W. Russ, was employed by the defendant company in mixing feed in the upper story of its elevator, and, while so employed, and at work in the place assigned to him, he fell through a trap-door into an empty bin, some seventy feet deep, and received injuries from which he died. The evidence shows, without conflict, that the trapdoor through which the deceased fell was immediately in front of the entrance

to the room where his principal work was done, and that in doing his work he was required to pass over this door frequently. The negligence charged in the petition and amendment thereto is that the defendant "permitted the said trapdoor to be and become out of repair, and to be and become unsafe, by causing, permitting, and allowing the hinges which held said trapdoor in its place to be unfastened at one end, and the screws to be removed therefrom, and the place where the said deceased was at work, and was required to work, by defendant, thus and thereby became unsafe," and that "when the hinges thereof were unfastened, and the screws removed therefrom, there was not sufficient framework or support underneath the said door to sustain and uphold the same, and keep it from slipping and falling through the said chute." The answer admits that the hinges of the trapdoor were not fastened to the floor, and alleges that they had not been at any time during the employment of the deceased in the mill, and that the screws from the hinges had been removed before he commenced work for the company, and that they remained in the same condition during all the time deceased worked there, and that he had knowledge of this fact. The accident which resulted in the death of young Russ occurred when he was alone, and his injuries were such that he was never able to make known the manner of its happening. Whether it was caused by the slipping of the door, on account of unfastened hinges, or whether caused by insufficient bearings for the door, can never be known. At the time the deceased went to work for the defendant, his attention was called to the fact that the hinges on the trapdoor were loose, and that it had at one time slipped when Steele was passing over it. The deceased had worked for defendant about three weeks at the time he fell, and during all of this time had passed over this door many times each day. It is contended by the appellant that the risk of working about the unfastened trapdoor was one of the risks inherent in the original employment of deceased, and was assumed by him. This is conceded by appellee, so far as it relates to the condition of the hinges, but appellee urges that it is not true as to the defective bearings complained of. The undisputed record is that the door, and its hinges and the bearings upon which it rested, had been in the same condition as at the time of the accident for more than four months previous thereto. Prior to the employment of deceased, other employes of defendant had worked about it in the same manner he was doing. It was crossed hundreds of times, and the witness Steele says that he stood upon it about five minutes before deceased fell, and that it then seemed to be all right. It is evident, then, that the bearings were of sufficient width and strength to fully support the door, so long as it remained squarely upon them. Conceding that they were as narrow as claimed by appellee, they would still support

any direct downward pressure they were called upon to bear. If this is true, and we think it undisputed in the record, it follows that the accident could not have happened had the door remained in place. If the door slipped from its place, it was on account of the unfastened condition of the hinges, and the jury could not have found otherwise under the evidence. The risk of the door so slipping was assumed by deceased when he was informed and knew that its hinges were unfastened, and that while in that condition it had once slipped with Steele. If it be admitted, for the purposes of this case, that deceased did not know, and was not bound to know, the condition of the bearings of the door, and that no risk was assumed by him on account of their condition, it is still true that the jury had no evidence before it that the lack of greater width in the bearings in any way caused or contributed to the injury to deceased; hence the verdict was not based upon the evidence, but was the product of surmise and conjecture, and cannot be upheld. No citation of authorities is necessary to maintain this proposition. The motion to direct a verdict for the defendant should have been sustained.—REVERSED.

GRANGER, C. J., not sitting.