[Crim. No. 843.  Second Appellate District, Division Two.—February
14, 1922.]

THE PEOPLE, Respondent, v. A. C. DINGLE, Appellant.

[1] MOTOR VEHICLE ACT—DRIVING UNDER INFLUENCE OF INTOXICATING
LIQUOR—TERM DEFINED.—If intoxicating liquor has so far affected
the nervous system, brain, or muscles of the driver of an auto-
mobile as to impair, to an appreciable degree, his ability to oper-
ate his car in the manner that an ordinarily prudent and cautious
man, in the full possession of his faculties, using reasonable care,
would operate or drive a similar vehicle under like conditions,
then such driver is "under the influence of intoxicating liquor"
within the meaning of section 17 of the Motor Vehicle Act.

[2] ID.—VIOLATION OF SECTION 17—EVIDENCE.—In this prosecution for
a violation of section 17 of the Motor Vehicle Act, the staggering
walk of the defendant when taken from the car, his thick tongue,
his loud and boisterous language, his admission that he was too
"full" to drive his car, and the smell of sour wine or beer upon
his breath, were sufficient to show that he had indulged in an
alcoholic beverage of some kind; and the fact that his automo-
bile "zigzagged" down the street and crowded another automo-
bilist to the curb showed that he was so far under the influence
of the intoxicant that, to an appreciable degree, he had lost the
ability to drive his car in the manner that an ordinarily prudent
and cautious person, in the full possession of his faculties and
using due care, would have driven it under like conditions.

[3] ID.—ERRONEOUS ENDEAVOR TO INTRODUCE EVIDENCE—ABSENCE OF
PREJUDICE—REVERSAL OF JUDGMENT.—A judgment of conviction
cannot be reversed on appeal for a mistaken view as to the ad-
missibility of evidence which the prosecutor honestly sought to
lay before the jury, unless, from an examination of the record,

---

1.  Liability of person operating automobile while intoxicated,
note, L. R. A. 1917A, 313.

the appellate court is of the opinion that a miscarriage of justice was caused; and in this prosecution for a violation of section 17 of the Motor Vehicle Act the appellate court could not say that the defendant was prejudiced by the conduct of the district attorney in seeking to introduce in evidence a certain bottle, said to have contained intoxicating liquor, and in cross-examining one of defendant's witnesses with reference thereto, all evidence relating thereto having, on motion of the defendant, been stricken out and the jury having been admonished to disregard all that evidence.

[4] ID.—DEGREE OF INTOXICATION PROHIBITED—INSTRUCTIONS.—In a prosecution for a violation of section 17 of the Motor Vehicle Act, an instruction that under said section "it is not necessary that the person should be so-called 'dead drunk' or hopelessly intoxicated, but if you shall be convinced . . . that the defendant was in such condition from the use of intoxicating liquors that it so affected his acts or conduct, or movements, that the public or persons coming in contact with him could readily see and know that it was affecting him in this respect, and was reflected in his walk, acts, and conversation, and, if you shall find . . . that these conditions resulted from the use of intoxicating liquors and that the defendant was operating a motor vehicle upon a public highway in the county . . . , when in such condition, then the defendant was under the influence of intoxicating liquor within the meaning of statute," properly states what acts and what condition will justify a finding that the defendant was "under the influence of intoxicating liquor," within the meaning of the statute; such instruction being, if anything, too favorable to the defendant in requiring that the public "could readily see and know" that intoxicating liquor was affecting his acts and conduct and was being reflected in his walk and conversation.

[5] ID.—LOCUS CRIMINIS—ERRONEOUS INSTRUCTION.—The information having charged defendant with having driven his automobile "upon a public highway in the county of Orange, to wit, North Los Angeles Street, in the city of Anaheim," while under the influence of intoxicating liquor, and the witness for the prosecution who testified that his car was crowded to the curb by defendant's automobile having testified that on the evening in question the defendant, when the witness saw him, was driving northerly on North Los Angeles Street, the trial court did not commit error in modifying an instruction requested by defendant by striking therefrom a portion thereof which required the prosecution to prove that defendant was under the influence of intoxicating liquor at the time he operated his automobile along a certain short stretch of said street.

APPEAL from a judgment of the Superior Court of Orange County. Z. B. West, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. E. Koepsel for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

FINLAYSON, P. J.—Defendant was charged with a violation of that provision of section 17 of the Motor Vehicle Act whereby it is declared that "No person who is under the influence of intoxicating liquor . . . shall operate or drive a motor . . . vehicle on any public highway within this state." (Stats. 1919, p. 214.) He was tried before a jury, was found guilty as charged, and was sentenced to imprisonment in the county jail for the term of six months. On this appeal from the judgment he contends that the evidence is insufficient to justify the conviction in that it fails to show that he was intoxicated, that in cross-examining one of defendant's witnesses relative to a certain bottle and its contents, the district attorney was guilty of misconduct, and that the court erred (a) in permitting the district attorney to pursue such line of cross-examination, (b) in giving a certain instruction, and (c) in refusing to give an instruction in the form requested by defendant.

The evidence was clearly sufficient to justify the verdict. It is conceded that at the time laid in the information defendant was operating and driving an automobile on a public highway in the city of Anaheim. The whole case revolved around the question as to whether defendant was "under the influence of intoxicating liquor," within the meaning of that phrase as used in the Motor Vehicle Act. Witnesses for the prosecution testified that defendant's automobile, while being driven by him, "zigzagged" down the street from one side to the other; that he drove his car so that it crossed directly in front of that of another automobilist who was traveling in the same direction, forcing the latter to the curb and compelling him to stop; that when defendant was taken from his machine by the arresting officer he staggered and walked very unsteadily; that at times his talk was thick; that he said to the officer who arrested him, "I guess I am too full to drive it"; that he talked as loud as he could, and applied profane and

opprobrious epithets to a witness who was keeper of an auto park simply because the latter would not guarantee that defendant's car would not be stolen if he parked it on the witness' premises. The last-mentioned witness likewise testified that defendant's breath smelt ''like sour wine—beer smell.''

[1]   We entertain no doubt as to the sufficiency of this evidence to show that defendant was ''under the influence of intoxicating liquor,'' within the meaning of the statute. The act contains no definition of those words. It doubtless is true that not any and every ''influence'' produced by intoxicants will subject one to the penalties prescribed by the statute for this offense. As was said by the Wisconsin supreme court in *Bakalars* v. *Continental Casualty Co.*, 141 Wis. 43 [18 Ann. Cas. 1123, 25 L. R. A. (N. S.) 1241, 122 N. W. 721], ''The 'influence of intoxicants' is a very elastic term.'' There the court was considering the meaning of the phrase ''under the influence of any intoxicant,'' as used in an accident insurance policy. Upon the question of the discernible effects of intoxicating liquor, the Wisconsin court further said: ''We are told by physicians and experimenters that the most trifling quantity of alcohol has some effect, and that its effect persists for days, if not permanently, so that one is literally under the influence from a single ordinary potion. We know, as a matter of common knowledge, that one of the first influences may be to stimulate those very faculties of observation and alertness which would improve the capacity of the subject to shield himself from danger, or escape, and that some such degree of influence of an intoxicant would not in any respect increase the peril of injury.'' If, as stated by the learned author of the opinion in this Wisconsin case, the most trifling quantity of alcohol produces an influence that will persist for days, if not permanently, it is a natural and almost necessary assumption that the words ''under the influence of intoxicating liquor'' were not inserted in the Motor Vehicle Act for the purpose of fastening guilt in the case of every and any ''influence'' due to the use of intoxicating liquors, however slight. The field, therefore, is open for construction to ascertain just what degree or kind of ''influence'' is within the purview of the statute.

We shall not assume to give any complete or all-inclusive definition of these words of the statute. We shall not undertake to express with precision the exact constituent ingredients of the word "influence," as employed in this act. However, with respect to the meaning of the phrase "under the influence of intoxicating liquor," as used in this statute, we think we are well within the bounds of accuracy in saying that if intoxicating liquor has so far affected the nervous system, brain, or muscles of the driver of an automobile as to impair, to an appreciable degree, his ability to operate his car in the manner that an ordinarily prudent and cautious man, in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions, then such driver is "under the influence of intoxicating liquor" within the meaning of the statute.

[2] If defendant's condition and conduct be tested by the foregoing definition, it must be held that the evidence against him was sufficient to justify a finding that he operated and drove his automobile while "under the influence of intoxicating liquor." His staggering walk, his thick tongue, his loud and boisterous language, his admission that he was too "full," to drive his car, and, as one witness testified, the smell of sour wine or beer upon his breath, were sufficient to show that he had indulged in an alcoholic beverage of some kind. And the fact that his automobile "zigzagged" down the street and crowded another automobilist to the curb shows that he was so far under the influence of the intoxicant that, to an appreciable degree, he had lost the ability to drive his car in the manner that an ordinarily prudent and cautious person, in the full possession of his faculties and using due care, would have driven it under like conditions.

[3] Defendant put upon the witness-stand one Max Selscheider, the proprietor of a resort known as the Liberty Grill, who testified that he talked with defendant while the latter was in the witness' establishment; that this was shortly before defendant's arrest; and that while defendant was in the witness' resort he drank nothing but near-beer, and walked and talked all right. Defendant was arrested almost immediately after driving his car from in front of the Liberty Grill. On his cross-examination of Selscheider,

the district attorney exhibited to him a bottle on which was a label stating that the alcoholic content of the bottle was twenty-five per cent. The witness testified that the bottle was similar to other bottles kept on hand in his resort and sold by him to customers, and that a bottle of that description contains a "tonic," the alcoholic content of which is, as stated on the label, twenty-five per cent. The witness denied, however, that he had sold any such bottle of "tonic" to defendant on the evening in question, or that he had seen any employee sell such a bottle to defendant. All of this evidence went in over the vigorous objection of defendant's counsel. It was admitted upon the district attorney's assurance that he would "connect it up with the case later on." Later, on rebuttal, the prosecution sought to show by the arresting officer that the latter had found a bottle in defendant's car. We infer from the record that it was the district attorney's intention to prove by the officer that he had found in defendant's car a bottle similar to the one which the prosecutor had exhibited to the witness Selscheider on his cross-examination of that witness. To the district attorney's question asking the arresting officer if he had found any bottles in defendant's car, the defendant objected and the objection was sustained. Thereupon, after an unsuccessful attempt by the prosecuting officer to file the bottle as an exhibit in the case, defendant's counsel moved that all the testimony of the witnesses in reference to any bottle be stricken out and the jury instructed to disregard such testimony and likewise to disregard the bottle which had been exhibited to the witness Selscheider. The court granted the motion to strike, and admonished the jury as follows: "I instruct you, all of the evidence pertaining to the bottle which was testified to by the witnesses as containing liquor of twenty-five per cent alcohol is not for your consideration. All the balance of the evidence in the case is for your consideration."

It is claimed that in offering the bottle in evidence and in cross-examining defendant's witness with respect thereto, the prosecutor was guilty of misconduct. It is not at all apparent that the prosecuting officer acted in bad faith, or that he asked the questions or exhibited the bottle to the witness for the wanton purpose of raising a prejudice against the defendant. Indeed, from the questions asked of

the arresting officer on rebuttal it would seem that the
district attorney had some reason to believe that a bottle
such as that shown to the witness Selscheider had been
found in defendant's car. If such were the case, and if it
also appeared that the contents of the bottle in defendant's
car, if any bottle was found there, had been wholly or
partially consumed, there would be ground for the inference
that someone in Selscheider's resort had sold the bottle to
defendant and that the latter had drank therefrom, thus not
only tending to discredit Selscheider's testimony that de-
fendant had drank nothing but near-beer while in the resort,
but also tending to show that the defendant had, indeed,
drank some alcoholic liquor on the evening in question, prior
to his arrest. So that it is not clearly apparent that the
district attorney's position as to the admissibility of the
evidence was wrong in law. But conceding that it was, a
judgment of conviction cannot be reversed for a mistaken
view as to the admissibility of evidence which the prosecutor
is honestly seeking to lay before the jury, unless, from an
examination of the record, we may be of the opinion that a
miscarriage of justice has been caused. In view of the
order granting defendant's motion to strike out all of the
testimony relative to the bottle and the court's admonition
to the jury to disregard all that evidence—an admonition
which it will be presumed was heeded—it cannot be said that
the defendant's cause suffered by reason of the questions
propounded by the prosecutor and the exhibition of the
bottle to the witness Selscheider. So, also, any error which
may have been committed by the court in overruling de-
fendant's objections to the questions which were put to the
witness on his cross-examination by the district attorney was
cured by the order granting defendant's motion to strike,
coupled with the court's admonition to the jury. (*People
v. Terramorse,* 30 Cal. App. 267 [157 Pac. 1134].)

[4] Complaint is made of the following instruction:
"The information in this case is filed by the district at-
torney under section 17 of the motor vehicle law of 1919,
which reads in part as follows: 'No person who is under the
influence of intoxicating liquor . . . shall operate or drive
a motor vehicle on any public highway within the state.'
The court instructs you that under this section it is not
necessary that the person should be so-called 'dead drunk'

or hopelessly intoxicated, but if you shall be convinced, beyond a reasonable doubt, from the evidence in the case, that the defendant was in such condition from the use of intoxicating liquors that it so affected his acts or conduct, or movements, that the public or persons coming in contact with him could readily see and know that it was affecting him in this respect, and was reflected in his walk, acts and conversation, and, if you shall find from the evidence in the case, beyond a reasonable doubt, that these conditions resulted from the use of intoxicating liquors and that the defendant was operating a motor vehicle upon a public highway in the county of Orange, when in such condition, then the defendant was under the influence of intoxicating liquor within the meaning of the statute and you should find him guilty as charged.''

Appellant's criticism of this instruction is based upon the claim that it does not properly define ''intoxication.'' The statute does not say that no person shall operate or drive a motor vehicle on the public highway while ''intoxicated,'' but that no person shall operate or drive such a vehicle on the public highway while ''under the influence of intoxicating liquor.'' The instruction, therefore, very properly does not undertake to define ''intoxication,'' but does state what acts and what condition will justify a finding that the accused is ''under the influence of intoxicating liquor,'' within the meaning of the statute. It is probably true, however, that the phrase ''under the influence of intoxicating liquor'' is, substantially and to all practical intents and purposes, synonymous with such words as ''intoxication'' and ''drunkenness.'' But even so, the instruction gives a good definition of ''intoxication.'' In *St. Louis etc. Ry. Co.* v. *Waters,* 105 Ark. 619 [152 S. W. 137], the Arkansas supreme court defined intoxication, or drunkenness, substantially in accord with the definition given in this instruction. In that case the court said: ''A man may be said to be drunk whenever he is under the influence of intoxicating liquors to the extent that they affect his acts or conduct so that persons coming in contact with him could readily see and know that the intoxicating liquors were affecting him in that respect.''

Moreover, the instruction was, if anything, too favorable to defendant. A person may be so far under the influence

of intoxicating liquor that, to an appreciable degree, there is an impairment of his ability to operate his automobile in the manner that an ordinarily prudent and cautious person, in the full possession of his faculties, would operate a similar vehicle under like conditions; and yet the person whose ability to operate his car is thus impaired might not be so drunk that the public, or persons coming in contact with him, could "readily" see and know that intoxicating liquor was affecting his acts or conduct and was being reflected in his walk and conversation. The drink may have impaired his ability to drive his car properly by imparting to him a dash of dangerous recklessness, without in anywise manifesting itself in his speech, or in his walk, or be noticeable in his intellectual processes. We find no prejudicial error in this instruction.

[5] Finally, it is contended that the court erred in giving in a modified form an instruction requested by defendant. The instruction as requested reads: "I instruct you that before you can find the defendant guilty of the crime charged in the information, the prosecution must establish beyond a reasonable doubt that the defendant operated a motor vehicle, to wit, an automobile, upon North Los Angeles Street, in the city of Anaheim, California, and that he was under the influence of intoxicating liquor at the time that he operated said automobile; *and if there is a reasonable doubt in your mind as to whether or not he was under the influence of intoxicating liquor at the time he operated the automobile from in front of the grill to the place where he was arrested, you should give him the benefit of that doubt and acquit him.*" The portion of the proposed instruction which we have italicized was stricken out by the court. Appellant has not made his position very clear. If we correctly understand him, his point is this: Because, forsooth, the arresting officer saw the defendant drive his car only from the spot where it had been left in front of the Liberty Grill to the place where the arrest was made, which is but a very short distance, defendant should not be convicted unless it were proven, beyond a reasonable doubt, that he was under the influence of liquor while driving his car along that short stretch of North Los Angeles Street. The information charges defendant with having driven his automobile "upon a public highway in the county

of Orange, to wit, North Los Angeles Street, in the city of Anaheim,'' while under the influence of intoxicating liquor. The witness who testified that his car was crowded to the curb by defendant's automobile testified that on the evening in question the defendant, when the witness saw him, was driving northerly on North Los Angeles Street. Clearly, the part of the instruction that was stricken out by the court was an unwarranted attempt to place an undue limitation upon the right of the prosecution to demand a conviction as charged in the information.

The judgment is affirmed.

Works, J., and Craig, J., concurred.