[Civ. No. 9682. First Appellate District, Division One.—November 13, 1935.]

MARY NOBLE et al., Respondents, v. KEY SYSTEM, LTD. (a Corporation), et al., Defendants; M. J. WIREN, Appellant.

Griffith R. Williams, Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

John T. Wentz and Booth B. Goodman for Respondents.

WARD, J., *pro tem.*—Primarily this appeal involves the definition of the word "intoxication" as used in section 141¾ of the California Vehicle Act. The purpose of the section is to advance the safety of travel on public highways, and to protect the operator of a vehicle from the payment of damages resulting from an accident due to a failure to use ordinary care toward a person who accepts a ride without giving compensation therefor. The section provides that the person responsible for the operation of a vehicle is not relieved of liability for an injury or death proximately resulting from the intoxication of the person responsible for the operation of the vehicle. Appellant contends that the judgment lacks evidentiary support; that the deceased was guilty of contributory negligence, and that the trial court erred in the admission of certain evidence and in giving certain instruc-

tions. These matters presented for consideration mainly relate to the subject of intoxication.

The word "intoxication" is not susceptible of a definition so accurate that it could fit the facts of each case. Its meaning necessarily varies, depending upon its application to a situation, contract or statute. The use of the word in an insurance policy might be defined in accordance with its association with other words such as "insane" or "delirious". (*Bakalars* v. *Continental Casualty Co.*, 141 Wis. 43, 46 [122 N. W. 721, 18 Ann. Cas. 1123, 25 L. R. A. (N. S.) 1241].) Such a definition is distinguishable from the intent of the legislators in its use in section 141¾ of the California Vehicle Act. Appellant presented an instruction which was properly refused, reading in part as follows: " . . . 'intoxication' is synonymous with 'drunkenness' . . . " The effect of this instruction might have been to leave the jury with the thought that an extreme degree of inebriation was required; that is, that it was necessary that the jury should find the defendant was devoid of physical or mental power. This would bring the jury to the determination that the intoxication should be of such a degree that a person could not drive an automobile. Such a conclusion is not sound when we consider that the statute would be ineffectual unless the car was actually operated. The section does not mean drunken stupor, often used synonymously with "drunkenness". The word "intoxication" in section 141¾ must be given the meaning intended by the legislators. That it refers to the use of alcoholic liquor is unquestionable. A guest is prohibited under this particular section from obtaining redress for the omission of the driver of the vehicle to do something which an ordinarily prudent person would do under similar circumstances, or the doing of something which such person would not have done in the same situation, unless the act performed or the omission to perform the act proximately resulted from the intoxication of the person responsible for the operation of the vehicle. Any degree of intoxication which, under all the circumstances of the case, proximately causes the doing or refraining from doing any act which is classified as a negligent act is a sufficient degree of intoxication to come within the statute. (*Knickrihm* v. *Hazel*, 3 Cal. (2d) 721 [40 Pac. (2d) 305].)

The trial court correctly instructed the jury that the death in this case must proximately result from the intoxication of the driver of the vehicle. The jury was also instructed in the language used in the decision of *People* v. *Dingle,* 56 Cal. App. 445, 449 [205 Pac. 705], defining the phrase "under the influence of intoxicating liquor". Appellant contends that this instruction authorized a verdict against the defendant for something less than intoxication; in other words, that a person may be "under the influence of intoxicating liquor" to such a degree as to deprive him of the ability to exercise ordinary care "and at the same time not be drunk". This question has been answered heretofore. However, the trial judge in the present case, at the request of appellant in an instruction which was modified, defined intoxication as "an abnormal mental or physical condition due to the influence of alcoholic liquors". This instruction, when considered in conjunction with all that has been noted before concerning the subject, is a sufficient and fair determination of the meaning of the word "intoxication" as used in section 141¾ of the California Vehicle Act.

The court gave the following instruction: "The law presumes that the deceased exercised reasonable care in all matters connected with the accident. The law also presumes that the defendant was not intoxicated. Such presumptions are a species of evidence that continue with the respective parties unless and until contrary evidence has been introduced." A disputable presumption is a substitute for proof of facts. It is a species of evidence that may be accepted and acted upon when there is no other evidence to uphold the contention for which it stands. When evidence is introduced supporting such contention the evidence takes the place of the presumption and, as stated in *Paulsen* v. *McDuffie,* 4 Cal. (2d) 111 [47 Pac. (2d) 709], at page 119, there is "neither necessity nor reason for indulging in any presumption". In appellant's briefs there is no attack upon that portion of the instruction that "the law presumes that the deceased exercised reasonable care in all matters connected with the accident", and we therefore refrain from comment except to observe that the guest was killed as a result of the accident and that in the absence of other evidence tending to prove that the deceased had exercised due care plaintiff was entitled to a correct instruction on this

phase of the case. (*Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 Pac. 529].) Appellant challenges that portion of the instruction to the effect that the law presumed the defendant was not intoxicated "unless and until contrary evidence has been introduced". A disputable presumption may be controverted by other evidence, but if uncontradicted it is satisfactory. (Code Civ. Proc., sec. 1963.) ■ If contrary evidence is introduced the jury has the right to weigh the evidence and determine whether it sufficiently contradicts the presumption. In a civil case if the controverting evidence has more convincing force than the privilege of the presumption that certain facts may be taken for granted without proof, then the presumption vanishes until the party entitled thereto meets the controverting facts with other evidence upholding the theory of the presumption. ■ A disputable presumption has no weight against an admitted fact and cannot prevail against a proved fact, but it is not overcome merely because evidence has been introduced in opposition thereto. (*People* v. *Milner*, 122 Cal. 171, 179 [54 Pac. 833]; *Pabst* v. *Shearer*, 172 Cal. 239, 242 [156 Pac. 466]; *Larrabee* v. *Western Pacific Ry. Co.*, 173 Cal. 743, 747 [161 Pac. 750].) ■ In this case the trial judge instructed the jury that "if the evidence is contradictory, your decision must be in accordance with the preponderance thereof" and that "you are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in your minds against . . . a presumption . . . " (Code Civ. Proc., sec. 2061, subd. 2; *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1, 7 [210 Pac. 269].) The challenged instruction in so far as it covered the subject of intoxication, when considered with other instructions, was favorable to appellant. Evidence of nonintoxication was introduced which the jury was permitted to consider in addition to the presumption. Evidence having been introduced that the defendant was not intoxicated it was not necessary that the court instruct the jury that "the law presumes that the defendant was not intoxicated". (*Paulsen* v. *McDuffie, supra.*)

■ The next question raised on this appeal is—does the judgment lack evidentiary support of the defendant's intoxication, and was the death of the guest proximately caused thereby? That alcoholic liquor was consumed is a circum-

stance tending to prove intoxication. The evidence shows that on the morning of the accident defendant was suffering from the results of liquor taken the day before. During the day of the accident he absorbed at least several glasses of wine. Subsequent to the accident he had an alcoholic breath. This evidence, notwithstanding the testimony opposed thereto, was sufficient to warrant the jury in determining that the defendant had partaken of intoxicating liquor. Immediately before the accident, driving on the wrong side of the street, defendant missed by two feet a collision with an interurban train. This accident was avoided by the motorman using his emergency brakes. With unabated speed of fifty-five miles an hour defendant continued for six hundred feet straight ahead, passing a wigwag signal with a ringing bell and a red light, and paying no attention to the approaching second interurban train, and crashed on the right side of the front thereof with such force that the automobile was partly telescoped, the cow catcher and bumper of the train bent, and the floor of the motorman's cab splintered. Two guests were killed and the defendant injured. The evidence relative to the accident was sufficient to convince the jury that the alcoholic liquor consumed caused an abnormal mental or physical condition of the defendant that precluded him from operating his automobile with the care and caution that would be used by a normal person of ordinary prudence under the same circumstances, and that the death of the guest was proximately caused thereby.

The cause without which the accident would not have occurred, under the implied findings of the jury, was intoxication. Appellant contends that if the defendant was intoxicated it was superinduced by the participation of the deceased in drinking alcoholic beverages on the day of the accident in the company of the defendant, and that the decedent must have known of the defendant's intoxicated condition, and as the guest of defendant deceased was guilty of contributory negligence by assuming the risk of riding with an intoxicated driver. In the cases cited by appellant (*Jones* v. *Pacific Gas & Electric Co.*, 104 Cal. App. 47, 57, 58 [285 Pac. 709], *Whitsett* v. *Morton*, 138 Cal. App. 628, 637 [33 Pac. (2d) 54], *Lynn* v. *Goodwin*, 170 Cal. 112, 113 [148 Pac. 927, L. R. A. 1915E, 588], and *Schneider* v. *Brecht*, 6 Cal.

App. (2d) 379 [44 Pac. (2d) 662]), there was evidence that the guest knew or from the circumstances shown by the evidence must have known of the driver's intoxication. In the instant case there is no evidence that the decedent knew that defendant was intoxicated. There is some evidence that decedent and defendant imbibed liquor on the day of the accident. Prior to that date decedent and defendant were strangers. It is possible that the evidence introduced was not sufficient to lead the jurors to believe the decedent must have known that defendant was intoxicated. When the sufficiency of the evidence to support an issue is challenged, inferences reasonably drawn therefrom tending to establish the correctness of the jury's conclusion must be considered by a reviewing court to uphold a judgment. In this case there was a presumption that the decedent exercised ordinary care for his own safety. (*Smellie* v. *Southern Pacific Co.*, *supra*.) The only evidence to controvert this presumption is the testimony that decedent was present when defendant consumed several glasses of wine. The jury evidently concluded that the evidence was not sufficient to overthrow the presumption.

██ The court gave the following instruction: "The train involved in the collision testified to in this case had the right of way over all automobiles using the said highway, and it was the duty of every driver of an automobile to approach the said tracks with reasonable caution and, if necessary, to slow up and stop his automobile to permit the said train to pass. If the driver of an automobile fails to give the right of way to a train, and if such failure is due to intoxication of the driver, the driver of such automobile is responsible for injuries or death resulting to a guest in his automobile directly or proximately caused thereby, unless the guest is guilty of negligence proximately contributing to his own injuries or death." The issue of right of way was a question of fact. The interurban train was traveling south on Poplar Street in the city of Oakland, preparing to turn into a private right of way between Twenty-fourth and Twenty-second Street junction at a speed of about eight miles an hour. When the train was approaching the curve the motorman saw the glare of the headlights of the oncoming automobile about fifteen hundred feet away, traveling north on the same street. In-

terurban trains under the present means of operation cannot travel except upon rails. To that extent the train had the right of way to which the operators of other vehicles should yield when necessary. (*Arnold* v. *San Francisco-Oakland Terminal Rys.*, 175 Cal. 1, 5 [164 Pac. 798].) As stated in *Armock* v. *United Railroads of San Francisco*, 56 Cal. App. 160, 163. [204 Pac. 856], referring to a similar instruction: "Standing alone this instruction would no doubt be misleading . . . ", but other instructions in conjunction with the full text of the complained of instruction fully and definitely informed the jurors of the respective rights of the train and the automobile. The jury was instructed that the law required of the Key System, Ltd., the duty of exercising ordinary care to protect from injury persons riding in automobiles north on Poplar Street as the trains cross from the west to the east side of the street, and that if such failure was the proximate cause of the accident the defendant Wiren was thereby exonerated. The jury was also instructed that if any act or omission on the part of the company in the maintenance of its tracks or in the operation of its trains was the sole proximate cause of the accident that the verdict should be in defendant Wiren's favor. ██ The rights and obligations of interurban trains when passing through sparsely populated thoroughfares are reciprocal with those of the automobilist, but if all the circumstances are otherwise equal, except the fact that the automobilist may turn or swerve in the operation of his vehicle while the train must remain on its tracks, then this fact gives a privilege of right of way, not absolute or exclusive and subject to the use of due care, to the operators of the train which a prudent automobilist must consider in the operation of his vehicle. (*Mathes* v. *Aggeler & Musser Seed Co.*, 179 Cal. 697, 701 [178 Pac. 713]; 22 R. C. L. 987, 988.) In the present case the train had switched from the right to the left tracks, and other travelers were being protected by lights, bells and a wigwag signal. Wiren knew that the tracks were used by the interurban train. On the night of the accident defendant Wiren was not approaching from a right or left angle but was driving his car north, while the train was approaching from the north. The diagrams introduced in evidence indicate a width of the street sufficient to have passed on either side of the tracks. It was a clear

night and there was nothing to obstruct the view of either the motorman or the defendant Wiren. The motorman saw the Wiren automobile fifteen hundred feet away and had a right to assume that the operator of the vehicle would slow up, and if necessary stop. The impact occurred four feet east of the westbound track. From a factual standpoint the train had the right of way. The jury could not reasonably have reached a contrary conclusion. Considered in conjunction with the entire charge of the court the complained of instruction cannot be held to be erroneous. In *Hamlin* v. *Pacific Electric Ry. Co.*, 150 Cal. 776, 783 [89 Pac. 1109], the court said: "It is incumbent upon the party appealing to show, not only abstract error, but error prejudicial to him upon the facts in evidence, and to avail himself of the point that an instruction was erroneous, he must bring before the court sufficient evidence to show that, upon a proper instruction, there might have been a finding in his favor."

Appellant complains of four instances of the admission of evidence prejudicial to the rights of appellant, based upon conclusions of the witnesses, or that the proper foundation for impeaching evidence had not been presented. It does not appear from an examination of the entire transcript of evidence or from the intrinsic nature of the alleged errors that substantial, if any, injury occurred that would warrant a reversal, or that alleged errors in the court's rulings resulted in a miscarriage of justice. On the contrary, the record is singularly free from error in the court's rulings on objections made to the admission of evidence.

A trial judge is in a better position than a reviewing court to weigh the evidence and determine whether the damages awarded are excessive. Only when it appears that the damages are so disproportionate that passion, prejudice or corruption must have swayed the jury will appellate courts interfere. In this case a widow and ten children were given $15,000. If the jury was justified in returning a verdict against the defendant, we conclude from all the facts of the case that the compensation was warranted.

 Appellant claims that, by the refusal of the court to permit full examination of prospective jurors and by the misconduct of the jurors, he was denied a fair trial. The Key System, Ltd., was a party defendant when the complaint was filed on March 2, 1934. During the month of June of

the same year a dismissal without prejudice was filed against the railway company and the case brought to trial before the statutory period of limitation had expired. After the defendant had exhausted his peremptory challenges a pensioned employee of the Key System was accepted as the twelfth juror. Counsel for defendant was given ample opportunity to examine the prospective juror. The juror was told that the defendant would attempt to prove the accident was entirely due to the negligence of those running the Key System train, and the following question was propounded and answered: "Q. That will not influence you in deciding our part of the case at all? A. Not at all."

On the motion for new trial an affidavit was filed alleging that a certain juror returned from the jury room with a copy of the California Vehicle Act, and that after the return of the verdict affiant, one of the attorneys for the defendant, "learned" that the juror had shown a portion of the vehicle act to another juror prior to the conclusion of the case. From the record the latter portion of the statement was not borne out, and it does not appear that the copy of the vehicle act was produced in the jury room. Other affidavits were filed on behalf of defendant wherein it appeared that subsequent to the verdict a juror in conversation with one of defendant's attorneys admitted that during the progress of the trial a juror visited the scene of the accident and took evidence out of court. Counteraffidavits were filed to the effect that the juror had merely driven an automobile in the vicinity of the accident but had not taken evidence out of court. The weight to be given to the allegations of the affidavits and counteraffidavits if admissible was a matter for the trial court to decide and not a matter to be determined upon appeal. (*Ham* v. *County of Los Angeles*, 46 Cal. App. 148, 154 [189 Pac. 462]; *Tunmore* v. *McLeish*, 45 Cal. App. 266, 269 [187 Pac. 443].) However, the affidavits relied upon by appellant were the affidavits of the attorneys containing admissions of the jurors. Affidavits of third persons to prove admissions of jurors to impeach a verdict are not countenanced by the courts. (*Walter* v. *Ayvazian*, 134 Cal. App. 360, 364, 365 [25 Pac. (2d) 526]; *Siemsen* v. *Oakland, S. L. & H. Elec. Ry.*, 134 Cal. 494, 497 [66 Pac. 672].) Finally, it does not appear from the affidavits that prejudice resulted from viewing the premises. (*Saltzman* v. *Sunset Tel. & Tel. Co.*, 125 Cal.

501–506 [58 Pac. 169].) The principal question in this case was intoxication and not the *locus* of the accident.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 13, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 10, 1936.