ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* WATERS.

Opinion delivered December 16, 1912.

1.   CARRIERS—DUTY TOWARD PASSENGERS.—When a conductor in charge of a train wrongfully arrests a passenger and ejects him from the train,

in pursuance of the act of 1909, conferring upon him that power, the railway company must bear the blame and pay the damages. (Page 623.)

2. SAME—ARREST OF PASSENGER—LIABILITY.—If a conductor in good faith arrests a passenger, having reasonable cause to believe that he is drunk, the railway company is not liable, even though it appears afterward that in fact the passenger was not drunk. (Page 623.)

3. SAME—DRUNKEN PERSON—DEFINITION.—It was error to instruct the jury that "for one to be in a drunken and intoxicated condition as defined by the law, he must be under the influence of intoxicating liquors to such an extent as to have lost the normal control of his bodily and mental faculties and to evince a disposition of violence, quarrelsomeness and bestiality." (Page 624.)

4. SAME—ARREST OF PASSENGER.—A railway company is not liable for the wrongful acts of its conductor in swearing out a warrant of arrest against a passenger on the next day after he was ejected from its train. (Page 625.)

5. FALSE IMPRISONMENT—JUSTIFICATION—BURDEN OF PROOF.—In an action to recover damages for false imprisonment where the arrest is without a warrant, if the imprisonment is proved or admitted, the burden of justification is on the defendant. (Page 625.)

Appeal from Jackson Circuit Court; *R. E. Jeffery*, Judge; reversed.

### STATEMENT BY THE COURT.

Appellee brought this suit against appellant to recover damages alleged to have been sustained by him in being wrongfully arrested and being ejected from one of appellant's trains while he was a passenger thereon.

Hal. C. Waters, the appellee, testified as follows: "I am the plaintiff in this action. On the 30th day of November, 1910, I left Pine Bluff, Arkansas, for Corning, Arkansas, over appellant's line of railroad. I reached Little Rock about 11:30 o'clock A. M. and left there for Corning about 4:30 that afternoon. The auditor took up my ticket, and it was never returned to me. I was put off of the train at Newport, Arkansas, by the conductor, whose name was Robinson. I was asleep in the chair car about 8 o'clock P. M. when the conductor came and caught me by the coat lapel and began jerking and shaking me. I woke up, and Mr. Wilkinson, who was with me, also woke up. The conductor told us that we were under arrest. I asked him if he was not mistaken, and he replied that he knew what he was doing. He told us to get off

of the train, that he was going to turn us over to the officer, and that we were arrested for doping and robbing two men in the smoker. The men whom the conductor claimed we had doped and robbed were also taken off of the train. We were held while they were being taken off and then delivered to the officers. After the other two men were taken off of the train, the conductor came back and tried to get us on the train and asked us to go on to Corning. We refused to do this, telling him that he took us off without any cause, and that, after he had gotten the two drunken men off and found that they were not robbed, he wanted us to go on, and we would not do it. We then went on to the jail with the town marshal where we remained about fifteen minutes, and then Mr. Wilkinson deposited a cash bond for our appearance the next morning. We went from there to the hotel, and there we remained during the night. I was not drunk, and did not drink any whiskey on the train."

Oscar Wilkinson testified to substantially the same state of facts as those testified to by appellee. Other witnesses who were on the train at the time appellee was arrested testified that he was not drunk, and did not drink any whiskey on the train.

The train auditor, the conductor, the brakeman and the train porter all testified that appellee was drunk on the train, and was so boisterous in his conduct that he disturbed the other passengers. They testified that all four of the men who were arrested and put off of the train were drunk.

Other witnesses who saw appellee and his companion on the depot platform at Newport after they were put off testified that they were drunk. The city marshal said that they were drunk, and that he carried them to the city jail because they were drunk and disorderly on the train. On the next day the deputy prosecuting attorney for Jackson County wrote out an affidavit for the arrest of appellee, and it was signed and sworn to by Robinson, the conductor on the train. Afterwards the case, by agreement of the deputy prosecuting attorney and appellee's counsel, was dismissed in the justice of the peace court from which the warrant of arrest was issued. Subsequently appellee was indicted for the offense of being

drunk on the train on the day in question, but the case had not proceeded to trial when the present case was heard.

The jury returned a verdict for appellee in the sum of fifty dollars, and the case is here on appeal.

*E. B. Kinsworthy, S. D. Campbell* and *R. E. Wiley,* for appellant.

1.    Under the statute the conductor acted as a public officer, and appellant is not responsible for his acts as such. Acts 1909, p. 99; 95 Ark. 506; 88 Ark. 583, 587; 87 Ark. 524; 177 Fed. 189; 147 Ill. App. 20; 66 W. Va. 607, 616; 196 Mass. 353, 82 N. E. 10; 20 Atl. 188.

In the absence of testimony to show that the conductor was acting under the instructions of appellant, the presumption is that he acted pursuant to his duties as a public officer; and the burden was on appellee to prove that he was acting for the railway company when he committed the alleged wrong. 115 Mo. 596; 58 Ill. App. 279; 34 Am. & Eng. R. R. Cases 307.

2.    The court erred in rulings and charge to the jury on the burden of proof. In an action for false imprisonment the gravamen of the case is the unlawfulness of the detention, which must be alleged and proved, and the burden on the whole case is on the plaintiff.    67 Am. St. Rep. 415; 103 Ala. 345, 49 Am. St. Rep. 32.    Want of probable cause is a necessary allegation in an action for false imprisonment.    32 Ark. 605, 607.    And it must be proved.    33 Ark. 316, 322; 32 Ark. 763, 772.    The burden of proving want of probable cause is on the plaintiff also in an action for malicious prosecution. 96 Ark. 325.

3.    The court erred in its instruction as to what constitutes drunkenness.    Neither party requested a definition of drunkenness, and the definition given was wrong.    It is not necessary that one go to the extent of showing violence, quarrelsomeness or bestiality in order to be guilty of drunkenness.

*I. J. Mack,* for appellee.

1.    The act does not make the conductor a peace officer, but only allows him to act as one when it becomes necessary to make an arrest; and if in performing this duty he acts in

good faith, the company is not liable. If he does not act in good faith, the company is liable. 95 Ark. 506. From the testimony, facts and circumstances in evidence, it is clear that the conductor in making the arrest was not acting in good faith in the belief that appellee was drunk.

The company was under the duty to protect its passengers from wrongful assaults and illegal arrests. 133 S. W. (Ark.) 170; 17 Am. Rep. 504.

2. The burden of proof was rightfully placed on the appellant to show that the arrest was lawful. 56 Atl. 380; 45 S. E. 698; 66 Ill. App. 173; 67 N. E. 201; 8 Pac. 104; 54 Atl. 986; 53 N. E. 134; 81 S. W. 490; 20 Pac. 92; 12 Ark. 47; *Id.* 50.

3. The court's definition of drunkenness was not erroneous. 86 Ark. 364.

HART, J., (after stating the facts). In the case of *St. Louis, Iron Mountain & Southern Railway Company* v. *Hudson*, 95 Ark. 506, the court held:

"In a suit against a carrier for an arrest made by its conductor. an instruction that, though the conductor was the judge as to whether plaintiff was intoxicated when arrested, yet if he was mistaken the company would be liable, was erroneous, as it ignored the question whether the conductor acted in good faith."

It is now the contention of appellant that when a conductor arrests a passenger and ejects him from a train, in pursuance of the act of 1909 conferring upon him that power, he acts solely as a peace officer, and the railway company can not be held responsible for his acts.

We can not agree with counsel in their contention. It is the settled law that when a railway company puts a conductor in charge of its train, and he wrongfully ejects a passenger from the car, the railway company must bear the blame and pay the damages. This is so because it is the duty of the railway company to treat its passengers properly and to carry them safely. There is nothing in the act in question to indicate that it was the intention of the Legislature to diminish the responsibility of the common carrier or to render it less liable for failure to discharge its duties than before the passage of the act. The conductor is the person whom the railway

company puts in charge of its trains, and it was the evident intention of the Legislature to enable the company to discharge the duties it owed its passengers the more efficiently through its conductor by the enactment of the statute in question. It gave the conductor the protection as well as the authority and power of the State in keeping and enforcing the law. If the conductor makes an arrest under the statute with reasonable cause for belief and in good faith, the railway company is not liable, even though it appears afterwards that in fact the person arrested was not drunk. *Gillingham v. Ohio River Railroad Co.,* 29 Am. St. Rep. (W. Va.) 827; *King v. Illinois Central Railroad Co.,* 69 Miss. 245.

Error is next assigned because the court gave the following instruction:

"For one to be in a drunken and intoxicated condition as defined by the law, he must be under the influence of intoxicating liquors to such an extent as to have lost the normal control of his bodily and mental faculties, and to evince a disposition of violence, quarrelsomeness and bestiality."

In this contention we think counsel for appellant are correct. The latter part of the instruction was erroneous. A person might be drunk and still not evince a disposition of violence, quarrelsomeness and bestiality. There are various degrees of drunkenness. It is a matter of common knowledge that intoxication affects men in different ways. Some men become quarrelsome when they are drunk, while others become stupefied and inactive, and still others do not give any outward and visible signs except a pleasurable excitement. A man may be said to be drunk whenever he is under the influence of intoxicating liquors to the extent that they affect his acts or conduct, so that persons coming in contact with him could readily see and know that the intoxicating liquors were affecting him in that respect.

In the case of *Midland Valley Railroad Company* v. *Hamilton,* 84 Ark. 81, the court said:

"Instructions given by the court undertaking to define soberness on the one hand and drunkenness on the other are criticised and assigned as error. It must be confessed that these instructions, to some extent, lacked accuracy, and were of little aid to the jury in determining from the evidence

whether the plaintiff was drunk or sober. In fact, it may well be doubted whether these terms are susceptible to any accurate definition for practical purposes. They sufficiently define themselves, and it would have been better to leave it to the jury, without attempt at definition, to determine what the condition of the plaintiff was in this respect."

The opinion of the court in this respect was approved in the case of *Brooke* v. *State*, 86 Ark. 364, and nothing said in the latter opinion was intended to be taken as a definition of drunkenness which could be given as a declaration of law in cases where that question was to be submitted to a jury.

In the case of *Little Rock Railway & Electric Company* v. *Dobbins*, 78 Ark. 553, the court said:

"A street railway company is liable for the wrongful acts of its conductor in ordering a policeman to arrest one of its passengers and remove him from the car in which he was riding; but not for such conductor's subsequent acts in prosecuting the passenger for a breach of the peace, such prosecution not being within the scope of the conductor's authority."

It follows that the appellant is not liable for the acts of its conductor in swearing out a warrant of arrest against appellee on the next day after he was ejected from the train. It was competent in the present case to show all that was said and done in the train pertaining to the arrest of appellee and all that was said and done on the depot platform at Newport after appellee was ejected. All that occurred after this time was not competent evidence. The undisputed evidence shows that the conductor and auditor of the train asked appellee while he was standing on the platform at Newport to get back on the train and that they would carry him on to Corning. The appellee refused to do this. The city marshal testified that he carried him on to the jail because he had been drunk and disorderly on the train. What happened after the conductor turned appellee over to the city marshal has no relevance to the case at bar; for the acts and conduct of the parties thereafter can not be attributed to the railway company, for the reason that the conductor's subsequent act in prosecuting the passenger was not within the scope of his authority as a servant of the company.

In an action to recover damages for false imprisonment,

where the arrest is without a warrant, if the imprisonment is proved or admitted, the burden of justification is on the defendant. In this respect the rule as to the burden of proof is not analogous to an action for malicious prosecution, where it has been held to be the duty of plaintiff to affirmatively show want of probable cause. *Jackson* v. *Knowlton*, 173 Mass. 94, 53 N. E. 134; *McAlees* v. *Good*, (Pa.) 65 Atl. 934, 10 L. R. A. (N. S.) 303. and case note. See also *Floyd* v. *State*, 12 Ark. 43.

Therefore, the court did not err in the instructions on the burden of proof. For the error in instructing the jury as to what constitutes drunkenness, the judgment will be reversed, and the cause remanded for a new trial.