## MARKS v. MOORE.

4-7802                                              190 S. W. 2d 524

Opinion delivered November 26, 1945.

John W. Moncrief, for appellant.

Buzbee, Harrison & Wright, for appellee.

GRIFFIN SMITH, Chief Justice. Claim was filed with Workmen's Compensation Commission against S. H. Moore, as employer, and Employers' Mutual Liability Insurance Company of Wisconsin. Matilda Marks, a colored woman, alleged she was the lawful widow of John Marks, and that her husband was killed when he fell from a truck then being operated on Moore's account. Other essential facts were asserted.

The defense was threefold: (a) The accident did not arise out of and in the course of employment; (b) death resulted solely because of intoxication; and (c) Marks had gone through the formality of marriage with a subsequent mate, and as to that transaction a presumption of validity attached—hence, it would be presumed John and Matilda had been divorced.

We only find it necessary to consider the contention that the decedent's misfortune was caused solely by his drunkenness—a finding declared by the Commission and sustained by Circuit Court.

In its summary, the Commission referred to the law's provision (Act No. 319 of 1939) denying compensation when injury or death would not have occurred if the employe had not been drunk—that is, as it was expressed, if Marks had been in possession of his normal faculties and there was no contributing cause."

Circumstances attending the accident were these: Moore's logging operations required that men be transported to a camp forty or fifty miles from Clarendon; and for this purpose he supplied trucks. The day Marks was killed Moore directed the men to leave Clarendon by noon. Bennie Whitley left with Moore in one truck and ordered Clyde Bass, a white man, to take another truck and get the workers into it. Bass let one of the negroes do the driving.

Ed Buie testified that on the day in question he was working for Moore and first saw Marks about six o'clock in the morning. Marks borrowed $1.75 and went toward a liquor store. Because of Marks' intoxicated condition it was difficult to get him into the truck, his insistence being that additional wine or liquor should be procured.

During the afternoon someone got off the truck, went into the liquor store, and bought a quart of wine. Seemingly, efforts to induce Marks to make the trip continued from around eleven or twelve o'clock until a little after four. He finally consented when it was apparent that the desired wine would be available. After the truck had been driven about four miles, Marks complained that some of

the men were using his wine allotment. He was then given half a pint, and probably drank it.

The truck carried an open "bed" or platform, with a toolbox near the cab. It is in evidence that the men, as a matter of precaution, endeavored to persuade Marks to lie down in this box, but he refused. Shortly after leaving Clarendon, the party met Moore. Willie Miller told his employer of the difficulty experienced in "getting the boys together." Moore directed that they proceed to camp. Miller testified: "We went on about three miles, when someone called, 'Stop—there is a man falling off!' [Marks] was drunk and I had begged him on two occasions to get into the toolbox"—a "five by six" box upon which six other men were sitting.

Substance of appellant's contention is that inasmuch as the men working for Moore found Marks at Clarendon in a drunken condition, he was then safe in respect of the tragedy that later occurred; and if left alone no injury would have resulted. But, it is urged, instead of doing this, Moore's servants spent nearly four hours cajoling and arguing with the intoxicated man, finally persuading him to accompany them when additional wine was procured—and, inferentially, when it had been promised as a reward for making the trip. The Compensation Commission made the following specific finding:

"Miller endeavored to have [Marks] enter a place of safety by going into either the cab or box on the truck, but this he drunkenly refused to do. Miller and Bass then drove the truck out of Clarendon and some miles from Clarendon the decedent and certain other employes of Moore became so rowdy while scuffling over the liquor that, as a safety precaution, Miller and Bass stopped the truck to allow them to finish drinking the liquor. At either this or a second trip, Marks got out of the truck, but in any event after the liquor had been consumed he was gotten back into the truck and when the party was preparing to continue the trip to the camp Miller and Bass, and perhaps other employes, made an effort to get the decedent to ride in the cab or toolbox of the truck, due to his drunkened condition. This, he drunkenly re-

fused to do and the driver continued the trip, decedent riding on the flat bed of the truck, he having refused to ride in a place of safety While riding in this position decedent was drunkenly engaging in drunken pranks and in so doing was attempting to punch one of the employes in front of him, and in so doing he fell from the truck and was killed."

The situation of Marks is not similar to that of S. L. Sullins, discussed in *Elm Springs Canning Company* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113. In that case it was not definitely shown that the event producing death was wholly traceable to intoxication, and the Commission's finding was against the defense that drunkenness, without a contributing cause, produced the result. In the appeal before us the Commission believed that Marks' conduct, while he was drunk, solely produced the fatal injury. But, it is urged, Moore's employes, with knowledge that their fellow servant was physically and mentally irresponsible, induced him to enter a place of danger, hence the master must be held accountable for the damage that followed: in other words, there was a contributing circumstance. This the Commission might have found; but it did not.

To overturn the order we would be required to find, as a matter of law, that the Commission acted upon insufficient evidence. Like a jury, the Commission may draw inferences from facts and circumstances; and finally it must say whether, in a particular case, the asserted right has been established, or that it has failed. When the controversy reaches this Court the inquiry is whether there was substantial testimony. Since the drunken condition of Marks is conceded, and the only claimed extenuation is that other acts intervened and contributed to the casualty, it must be held that there was substantial evidence for the Commission to reach its announced conclusion, and Circuit Court did not err in affirming the order.