# FALDON INDUSTRIAL WIRING
## COMPANY, INC. ET AL *v.* DARIEN DOWNS

73-187                    504 S.W. 2d 346

## Opinion delivered January 28, 1974

*Daily, West, Core & Coffman,* for appellants.

*Sam Sexton Jr.,* by: *James H. Broyles Jr.,* for appellee.

GEORGE ROSE SMITH, Justice. This is a workmen's compensation case arising from a back injury which the appellee suffered in the course of his employment. According to the medical testimony, the injury resulted in permanent partial disability of 15% as apportioned to the body as a whole. The referee and the commission increased the award to 25%, which was upheld by the circuit court. For reversal the insurance carrier contends, first, that it should not have been charged with a fee for the claimant's attorney upon the first 15% of disability, because that part of the claim was not controverted (Ark. Stat. Ann. § 81-

1332 [Repl. 1960]), and secondly, that there is no substantial evidence to support a finding of disability in excess of 15%. We agree with the carrier's first contention but not with the second.

Downs sustained his back injury in June, 1971, while carrying a heavy electric motor in the appellant Faldon's shop. Surgery was necessary. Dr. Lockhart, of the Holt-Krock Clinic, performed a laminectomy, removing an intervertebral disc. On September 27 Dr. Lockhart found that Downs was able to resume light work. The doctor, making no evaluation of permanent partial disability, instructed the patient to return for an evaluation after he had been at work for 30 days. Downs obtained light employment on October 8, but he did not return to the clinic as he had been told to do. The insurance carrier terminated its payments for total temporary disability on October 20, presumably because Downs had gone back to work. On December 8 the clinic sent a final report to the insurer, stating that the extent of permanent disability had not been assessed, because the patient did not return after October 8.

Downs, apparently without communicating either with Faldon or with the insurance carrier about a possible claim, employed an attorney, Robert Law. Law discussed the matter with the insurer or its adjuster. On January 3, 1972, Law wrote to his client, the claimant, saying in part:

> In checking into your case further, I find that apparently Dr. Lockhart when he examined you the last time either failed to make a note of your permanent-partial disability or else he wants to see you again for that purpose.
>
> At the request of the insurance company, we have made another appointment for you to see Dr. Lockhart in his office on January 20 at 9:30 a.m. At that time I think Dr. Lockhart will, perhaps, give us a permanent-partial disability rating in order that we might enter into a settlement talk with the insurance company.

Downs was examined by Dr. Lockhart on February 3. On February 22 the doctor notified the insurance carrier that he had examined Downs and that "a permanent partial disability of the body as a whole of 15% is suggested." Within less than a week the insurer accepted that evaluation by forwarding its check for the amount then due and explaining that the rest of the compensation would be paid in installments every two weeks for 48½ weeks. Mr. Law disagreed with the 15% assessment of permanent partial disability and requested a hearing, which resulted in the 25% award now before us.

We find no substantial basis for the commission's finding that the insurance carrier controverted the 15% disability claim. The Statute provides than an employer desiring to controvert a claim shall file with the commission a statement of the grounds on which the claim is controverted. Ark. Stat. Ann. § 81-1319 (d). There is no contention in the case at bar that either the employer or the carrier ever filed any such statement or made any other written or oral denial of liability.

The referee, whose finding upon this point was affirmed by the commission without comment, concluded that the carrier had controverted the claim because it made no effort to determine the claimant's disability after payments were stopped on October 20. The referee reasoned that "the fact that Dr. Lockhart had performed a hemalaminectomy and removed an intervertebral disc . . . would certainly put the respondents on notice that the claimant would receive some permanent disability." The referee observed that it was the claimant's attorney who made the appointment with Dr. Lockhart for an evaluation of permanent partial disability.

Accepting all the facts referred to by the referee, it does not follow that the carrier controverted the claim. A claim must exist before it can be controverted. On October 20 Downs had been paid in full for his total temporary disability and had obtained work. He had been instructed to return to the Holt-Krock Clinic after 30 days for an evaluation, but he failed to do so. It was he who was in default, not the insurer. When that default was finally

remedied, by the February report made by Dr. Lockhart, the carrier accepted the doctor's evaluation and at once paid the amount due. No importance can be attached to the fact that Mr. Law made the appointment with Dr. Lockhart, because Law stated in his letter to his client that he was acting at the request of the insurer.

The only remaining basis for the referee's finding is his statement that the performance of a "hemalaminectomy" and the removal of a disc should have put the carrier on notice that the claimant would receive some permanent disability. Although Dr. Lockhart testified that "the type of injury" was such that he would have assumed that the patient would have permanent partial disability, there is nothing to indicate that the insurance company should have known that fact. At the least a medical question was involved, which was plainly not such a matter of common knowledge as to be the subject of judicial notice. See Larson, Workmen's Compensation Law, § 79.54 (1971). Moreover, the claimant had completed his healing period, had gone back to work, and had disregarded Dr. Lockhart's request that he return after 30 days for an evaluation. Upon the record it cannot be said that the insurer's inaction amounted to a denial of liability.

There is, however, substantial proof to support the finding of a 25% disability. The commission, under the rule of *Glass* v. *Edens,* 233 Ark. 786, 346 S.W. 2d 685 (1961), was not limited to the medical testimony in determining the extent of disability. At the time of the hearing Downs was earning $3.00 an hour. His present employer testified in substance that if Downs had not been partially disabled he would be earning from $3.60 to $4.00 an hour. That testimony, as well as other proof in the record, amply supports the award.

Affirmed in part, reversed in part.

HARRIS, C.J., not participating.