830

MASS MERCHANDISERS, Inc., Employer
and HOME INSURANCE COMPANY,
Insurance Carrier *v.* Jimmy E. HARP

76-22                                          536 S.W. 2d 729

Opinion delivered June 1, 1976

*Putman, Davis & Bassett,* for appellants.

*Adams & Covington,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellee Jimmy E. Harp was an over-the-road truck driver for appellant, Mass Merchandisers, Inc. His claim for compensation for injuries incurred on May 4, 1974 in an automobile collision on Highway 166 near Edna, Kansas, was denied by the Workmen's Compensation Commission. The commission found that appellants, his employer and its carrier, had met their burden of proving that Harp was intoxicated and that his injury was solely occasioned by his intoxication. Specifically, the commission found that medical testimony showed that Harp had consumed sufficient alcohol to bring his blood alcohol content to a level which would impair one's judgment and depth perception and that impaired sense of judgment and depth perception seemed to be the only logical

explanation for the accident. Appellee appealed to the Circuit Court of Boone County. That court reversed the commission's denial of compensation, holding that appellants had failed to meet their burden of proving that Harp's injuries resulted solely from his intoxication. The court's findings were that the evidence was directed to a showing that Harp was under the influence of intoxicating liquors and that the commission erred by equating proof of blood alcohol content sufficient to raise a presumption that Harp was under the influence of intoxicating liquors with proof of intoxication. The court also found that there was no proof as to the cause of the accident. We reverse because we find substantial evidence to support the holding of the Workmen's Compensation Commission.

Perhaps there is justification in the circuit judge's and appellee's distinction between intoxication and being under the influence of intoxicating liquors, but it is one of degree only. See *St. Louis, I.M. & S. Ry. Co.* v. *Waters,* 105 Ark. 619, 152 S.W. 137. An accepted and appropriate definition of intoxication which will preclude compensation is the state of being under the influence of intoxicating liquors to the extent that one is not entirely himself or so that his judgment is impaired and his acts, words, or conduct is visibly impaired. 99 C.J.S. 908, Workmen's Compensation § 263. See also, 6 Workmen's Compensation Text (Schneider) 493, § 1587. This is very similar to a statement of this court that one is drunk, or in an intoxicated condition, whenever he is under the influence of intoxicating liquors to the extent that they affect his acts or conduct so that persons coming in contact with him could readily see and know that the intoxicating liquors were affecting him in that respect. *St. Louis, I.M. & S. Ry. Co.* v. *Waters,* supra.[1]

The first question then is the extent to which Harp was under the influence of intoxicating liquors at the time of the collision. The collision took place at approximately 5:30 p.m. A blood alcohol test was performed on Harp at the direction of Sgt. Seibert of the Kansas State Police and with the consent of Harp. It was done at the Coffeyville Memorial Hospital under the supervision of Dr. James W. Wilson. The

---

[1]This case was the source of AMI, Civil, 607.

results of that test showed a blood alcohol content of .120 "weight per volume." The sample on which the test was made was taken about an hour and a half after the collision. Dr. Wilson testified that the human liver has an enzyme that metabolizes alcohol, in the case of one with Harp's physique, at the rate of approximately nine cubic centimeters per hour, so that the blood alcohol level is thereby reduced. From this, he said it could be presumed that Harp's blood alcohol level would have been higher at the time of the collision and might have been as much as .150. Even at .120, this physician said that an average person would have some slurring of speech, possibly a showing of incoordination to a minimum degree, and, more seriously, impaired judgment and depth perception. He related that depth perception is one of the things that one imbibing alcohol loses first and that the result is impairment of direct relationship to things in space and compression of time and distance. According to Dr. Wilson, a person with that level of alcohol would be in the range of what a layman would call "tipsy, happy, relaxed." He explained that when one ceases drinking, the level of blood alcohol first rises to a peak within an hour, then declines.

Sgt. Seibert first saw Harp at least one hour after the collision at the hospital where Harp had been taken by ambulance. The officer immediately observed a strong odor of alcohol on Harp's breath, saw that Harp's eyes were bloodshot, and noted that his speech was slurred. He talked with Harp for about ten minutes and then asked Harp for his license, which Harp produced after fumbling through his wallet. He said Harp admitted drinking one beer at Joplin, commencing at 1:00 p.m. In the opinion of Seibert, who had investigated approximately 1000 accidents in his eight years with the Kansas State Police and had had occasion to observe people who had been drinking, Harp was definitely under the influence of intoxicating liquors.

Harp admitted drinking a 12 oz. can of beer at Mt. Vernon, Missouri about 10:00 a.m. He remembered that he had stopped in Branson, Missouri and had bought a 6-pack of 12 oz. cans of beer on the night preceding the day of the accident. When this evidence is viewed in the light most favorable to the commission's finding, the evidence that Harp was under the influence of intoxicating liquors at the time of his in-

jury to the extent that those coming in contact with him could readily see that his acts and conduct were affected by intoxicating liquors was very substantial. It also was substantial to show that Harp's judgment and speech were impaired.

It would be difficult indeed to account for the collision in which Harp was involved if it was not attributable solely to Harp's intoxication. He was driving along the highway on a stretch that was straight for a mile to a mile and a half, without any obstructions to view, when, after having followed a Cadillac passenger automobile for about a quarter of a mile, he undertook to pass the automobile. A collision quickly resulted. Harp testified that he was unable to see the car at the time of the collision. He didn't know what part of his tractor-trailer rig struck the Cadillac and said that nothing distracted his attention at the time. He admitted that the right rear wheel of the tractor-trailer rig he was driving came up over the back of the automobile. He had no knowledge of any improper driving on the part of the operator of the Cadillac and admitted telling Sgt. Seibert that he didn't know how the accident happened.

Seibert arrived at the accident scene at 5:53 p.m. He found the Cadillac automobile smashed. It was in a field north of the highway. Both vehicles has been proceeding in a westerly direction. Sgt. Seibert found skid marks and gouge marks on the north or westbound lane of the highway beginning at the indicated initial point of contact between the two vehicles. The gouge marks were one foot north of the center line of the highway. There were also skid marks in the passing lane. They originated at approximately the same point as the gouge marks, and were made by dual wheels. All of the automobile marks originated in the westbound traffic lane. The tracks of the left side of the truck were in the south or left-hand lane.

The damage to the Cadillac started at the back bumper. The left side of its rear deck lid was smashed down, the left rear window knocked out and the left side of the top smashed down even with the front windshield. There were tire marks on the car commencing at the back bumper which were continuous over the deck lid onto the top. It is clear that the tractor-trailer rig ran over the automobile and that the

Cadillac was entirely within its own proper lane.

Although Harp was totally ignorant of how the collision occurred, he claimed that a witness had told him that the Cadillac had swerved under his trailer and he had taken the name of this person. Admittedly he never told the investigating officer of this and claimed that he had lost the piece of paper on which the name was written when his pants leg was cut off at the hospital after he had talked with the officer. The commission found a lack of credibility in Harp's testimony and there were reasons to do so, among which were inconsistencies and conflicts in his testimony, his admission that he had falsified the log he had kept on the trip and his forgetting pertinent adverse facts.

Viewing the evidence in the light most favorable to the commission's findings, reasonable minds could conclude that Harp's intoxication was the only plausible explanation for the right rear wheels of the rig Harp was driving being literally run over the Cadillac automobile while that vehicle was moving along the highway in its own proper traffic lane. It seems highly unlikely that this could have resulted from anything other than a failure of the truck driver's perception of time, space and distance. Appellee admits that there was substantial evidence to support a finding that his coordination and depth perception were impaired to some degree and that his drinking might have, to some extent, contributed to the cause of the accident. Still, he says that no witness testified that Harp's drinking was the sole cause and that it cannot be said with certainty that it was.

It is true that doubts on factual issues are to be resolved by the commission in favor of a claimant. But that is the function of the commission, not the courts. Both the circuit court and this court must view the evidence in the light most favorable to the findings of the commission and give the testimony its strongest probative force in favor of the action of the commission. *Herman Wilson Lumber Co.* v. *Hughes*, 245 Ark. 168, 431 S.W. 2d 487. The test is whether the evidence before the court would have sustained a jury verdict. *Donaldson* v. *Socia*, 254 Ark. 158, 492 S.W. 2d 253. The most favorable view of appellee's arguments is that the commission might have found from the evidence that Harp was not intoxicated or

that his intoxication was only a contributing cause to his injury. Even so, the courts may not overturn the order of the commission holding to the contrary, unless it can be said as a matter of law, that the commission acted upon insufficient, i.e., insubstantial, evidence. *Marks* v. *Moore,* 209 Ark. 410, 190 S.W. 2d 524. The burden of proof on appellants was not to show Harp's intoxication and its being the sole cause of his injuries beyond a reasonable doubt. A preponderance sufficed. *O'Reilly* v. *Roberto Homes, Inc.,* 31 N.J. Super. 387, 107 A. 2d 9 (1954). And circumstantial evidence which does not leave the factfinder to speculation and conjecture is substantial evidence in workmen's compensation cases. *United Steelworkers* v. *Walden,* 228 Ark. 1024, 311 S.W. 2d 787.

It was incumbent upon the trial court to accept that version of the facts most favorable to the commission's findings. *Albert Pike Hotel* v. *Tratner,* 240 Ark. 958, 403 S.W. 2d 73. It was the function of the trial court and this court to determine whether there was any substantial evidence to support the commission's findings. *Goza* v. *Central Arkansas Development Council, Inc.,* 254 Ark. 694, 496 S.W. 2d 388. Neither a circuit court nor this court may reverse the findings of the commission on a disputed factual issue unless the proof is so nearly undisputed that fair-minded persons could not reach the conclusion of the commission. *Corbitt* v. *Mohawk Rubber Co.,* 256 Ark. 932, 511 S.W. 2d 184. There was substantial evidence to sustain the commission's findings, so both the circuit court and this court are bound by them. *Employers Cas. Co.* v. *United States Fidelity & Guaranty Co.,* 214 Ark. 40, 214 S.W. 2d 774.

The judgment must be reversed and the findings and conclusions of the Workmen's Compensation Commission reinstated.