## SPRINGDALE FARMS et al *v.*
## Barbara Ann McGARRAH

76-105                                    541 S.W. 2d 928

Opinion delivered October 18, 1976

*Crouch, Blair, Cypert & Waters,* by: *Jay N. Tolley,* for appellants.

*Putman, Davis & Bassett,* for appellee.

GEORGE ROSE SMITH, Justice. This workmen's compensation claim arises from a wrist injury sustained by the claimant, Mrs. McGarrah, in the course of her employment in a chicken processing plant. A surgical operation did not completely restore the claimant's use of her wrist. Dr. Moore fixed the functional loss of use of the arm below the elbow at 10%. Dr. Martin's testimony was similar to that of Dr. Moore, except that Dr. Martin made no estimate of the ex-

tent of disability. The employer and insurance carrier now contend that there is no substantial evidence to support the Commission's finding, affirmed by the circuit court, that the permanent partial loss of use amounts to 35%.

We consider the case to be controlled by our decisions in *Ray* v. *Shelnutt Nursing Home,* 246 Ark. 575, 439 S.W. 2d 41 (1969), and *Anchor Construction Co.* v. *Rice,* 252 Ark. 460, 479 S.W. 2d 573 (1972). In the *Ray* case we recognized that the Commission is not limited to the medical testimony in determining the extent of functional disability, but we also pointed out that the Commission's knowledge and experiences are not evidence and can only be used in weighing the competent proof. The *Anchor* case, like the case at bar, involved a scheduled injury. Ark. Stat. Ann. § 81-1313 (c) (22) (Repl. 1960). There we held that a scheduled injury cannot be apportioned to the body as a whole in determining partial disability and that the Commission, in fixing the partial loss of the use of a limb, cannot consider a wage earning loss in addition to the functional loss.

In the present case the Commission followed *Anchor* to the extent of not taking into account any wage earning loss suffered by the claimant. Nevertheless, the Commission increased the partial loss of use from 10%, as found by the medical testimony, to 35%. The Commission based its action upon the claimant's testimony that as a result of her injury she has difficulty in gripping mops and brooms in her housework, that she cannot open fruit jars, that her daughter must do most of the ironing, and that in other respects she is handicapped in the practical performance of her daily domestic activities.

The trouble is, all these difiiculties stem from the weakness in the claimant's right hand. That weakness was studied and evaluated by the doctors, with Dr. Moore fixing the functional loss at 10%. The claimant's testimony added nothing to the medical evidence; so, as in the *Ray* case, *supra,* her testimony cannot be used as a basis for increasing the percentage of functional loss.

The explanation for what is seemingly a harsh result was given in *Anchor,* where we quoted the following paragraphs

from Larson's Workmen's Compensation Law, § 58.10:

> The typical schedule provides that, after the injury has become stabilized and its permanent effects can be appraised, benefits described in terms of regular weekly benefits for specified numbers of weeks shall be paid, ranging, for example, from 312 weeks for an arm, 288 for a leg, and 160 for an eye to 38 for a great toe and 7 ½ for one phalange of the little finger. These payments are not dependent on actual wage loss. Evidence that claimant has had actual earnings, or has even been regularly employed at greater earnings than before, is completely immaterial.
>
> This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law — that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, instead of a specifically proved one based on the individual's actual wage-loss experience. The effect must necessarily be a presumed one, since it would be obviously unfair to appraise the impact of a permanent injury on earning capacity by looking at claimant's earning record for some relatively short temporary period preceding the hearing. The alternative is to hold every compensation case involving any degree of permanent impairment open for a lifetime, making specific calculations of the effects of the impairment on claimant's earnings each time claimant contends that his earnings are being adversely affected. To avoid this protracted administrative task, the apparently cold-blooded system of putting average-price tags on arms, legs, eyes, and fingers has been devised.

The reasoning that applies to loss of earning capacity must also apply to loss of housework capacity. Otherwise workmen's compensation insurance becomes general accident insurance.

We conclude that the Commission's action in increasing the claimant's loss from 10% to 35% must be set aside.

Inasmuch as the compensability of the claim was controverted at the outset, the Commission was not in error in allowing the maximum attorney's fee upon the award — now 10%.

Reversed.

We agree. HARRIS, C.J., and FOGLEMAN and JONES, JJ.