John ELLIS *v.* CLAYTON SHOE COMPANY

CA 79-106                                     595 S.W. 2d 229

Opinion delivered December 12, 1979
Petition for Review denied January 14, 1980
Rehearing denied February 20, 1980
Released for publication March 17, 1980

*Sam Boyce,* for appellant.

*Barber, McCaskill, Amsler, Jones & Hale,* for appellees.

M. STEELE HAYS, Judge. This is a Workers' Compensation case. In April of 1977, claimant, John Ellis, suffered a compensable injury which resulted in the amputation of a part of the index finger of claimant's left hand between the base of the nail and end of the finger. Claimant was paid 8.75 weeks of permanent partial disability for the loss of one-fourth the index finger.

On May 16, 1979, a hearing was held by the Administrative Law Judge to determine whether claimant was entitled to additional permanent partial disability benefits. Claimant alleged that he should have been awarded fifty percent compensation for loss of use to the finger under Ark. Stat. Ann. § 81-1313 (c) (18). He also contended that payments by the respondent, Fireman's Fund Insurance Company, were controverted because of untimely payments.

The Administrative Law Judge held that (1) claimant was not entitled to any additional permanent disability bene-

fits, and (2) respondents had not controverted payment of any benefits. The claimant appealed the decision to the Full Commission, and the Commission affirmed the judgment. He now brings this appeal.

He first alleges that a preponderance of the evidence indicates a fifty per cent loss of use to the claimant's left index finger. The Arkansas Workers' Compensation Act provides for loss of the use of a finger as follows:

Phalanges: Compensation for amputation of the first phalange shall be one-half of the compensation for the amputation of the entire digit . . . [Ark. Stat. Ann. § 81-1313 (c) (18)].

Ark. Stat. Ann. § 81-1313 (c) (22) provides:

Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member shall be for the proportionate loss or loss of use of the member.

Claimant contends that under the law as stated above, he is entitled to fifty per cent compensation for loss of the entire index finger, citing *Anchor Construction Company* v. *Rice,* 252 Ark. 460, 479 S.W. 2d 473 (1972) and *Springdale Farms* v. *McGarrah,* 260 Ark. 483, 541 S.W. 2d 928 (1976) as supporting authority that the Commission must base its findings of permanent disability on medical testimony and cannot alter the percentage assessed because of wage loss considerations or personal observations.

We agree with this contention by the claimant but, nevertheless, believe the Administrative Law Judge and the Commission made their findings of fact consistent with the medical testimony. Findings of fact by the Commission will not be disturbed on appeal unless unsupported by substantial evidence. *Purdy* v. *Livingston,* 262 Ark. 575, 599 S.W. 2d 24 (1977); *Mass Merchandise* v. *Harp,* 259 Ark. 830, 536 S.W. 2d 729 (1976). In the instant case, the evidence supporting the Commission's finding included the diagram of a hand by Dr. Barbour showing the point of amputation to be mid-way

between the base of the fingernail and the end of the finger. Also, the claimant's own testimony in response to a direct question on the matter is consistent with this finding:

Q. "That's your distal joint or end joint, so the amputation is somewhere between the base of your nail and the end of your finger, is it not?

A. "Yes." (T. 35)

Appellant also contends that Commission Rule 12 is in conflict with Ark. Stat. Ann. § 81-1313 (c) (18) previously cited in this opinion. Rule 12 provides:

Loss by amputation of half or less than half of the terminal phalange of a member shall be one-half of the loss of the phalange, or one-fourth of the digit. Loss of more than one-half of the terminal phalange of a member shall constitute loss of the phalange, or one-half of the finger . . . Ordinarily, the base of the nail may be used as a gauge of half of the phalange . . .

We believe that this rule is not in conflict with the provision in the Act, but simply amplifies it. As it applies to this case, it states that if the loss of use of the terminal phalange is less than one-half, as there is substantial evidence which indicates such, then only compensation for one-fourth of the "digit" will be allowed. This rule enlarges § 1313 (c) (22) which allows compensation for partial loss of a "member" proportionate to the loss actually suffered.

It appears from the record that the actual loss of that portion of the digit as well as the loss of use, to the extent that such losses can be measured, fell almost at the midpoint between entitlement to one-half of the loss under § 1313 (c) (22), as claimant contends, or one-fourth, as found by the Administrative Law Judge. Our own view would be to hold for the claimant in such cases under the rule that doubtful cases should be resolved in favor of the claimant, still, the Administrative Law Judge is in a better position than we to make judgments that are in part based on a visual impression of the affected member itself and we cannot say that his conclusion is not supported by substantial evidence.

Finally, claimant alleges that respondents controverted permanent partial disability benefits paid to the claimant. A medical examination was performed by Dr. M. R. Barbour in October of 1977 at the insurance company's request. When claimant returned to work, he asked for a payment of permanent partial disability which was not allowed until June of 1978 when the respondent finally received a report from Dr. Barbour.

Respondent explains the delay in part on the fact that Dr. Barbour, of Poplar Bluff, Missouri, discharged claimant in May of 1978 without permanent disability. As to whether Dr. Barbour was aware of the section of our Act dealing with scheduled injuries we need not speculate, as certainly the respondent was aware of that section and that the loss of a sufficient portion of the index finger carried a scheduled benefit.

Over the forty year life span of the Workers' Compensation Act, the legislature has repeatedly expressed the public policy in this state as being that claims of working men and women arising from work related injuries shall be handled expeditiously at every stage in the process. In the light of that avowed policy we are unwilling to countenance a delay of eight months in obtaining the simplest sort of evaluation from the treating physician. We reach that conclusion primarily because the physician was not selected independently by the claimant but at the referral of the employer, and presumably was, to some degree, answerable to the respondent. If he is unable or unwilling to give speedier attention to their medical affairs than was evidenced, the burden of that delay should rest upon the respondent and not upon the claimant.

Respondent argues that the lapse of time should be measured from February (when an A-7 was filed) rather than October, but that begs the question, inasmuch as the record fails to persuade us that the respondent even then showed any diligence in bearing down on Dr. Barbour for the awaited report. The law provides, as it should, that Workers' Compensation claims be given priority in the judicial process. That being so, is it fitting that a claim should lie

dormant for eight months awaiting the physician's completion of a standard form submitted to him for that purpose which could not have required more than ten minutes to complete? We think not. The Administrative Law Judge recognized the delay as unreasonably long, and the respondent acknowledged that the delay was regrettable. (T. p. 2). We find that the delay here justified the allowance of a fee to claimant's attorney as provided in the Act under Ark. Stat. Ann. § 81-1332 (Repl. 1976), and therefore hold that claimant's attorney is entitled to a fee of $200 for purposes of this appeal.

The award of the lower court is affirmed as modified.

Supplemental Opinion on Denial of Rehearing
delivered February 20, 1980

M. STEELE HAYS, Judge. Appellee's petition for rehearing asserts that without statutory or case law authority we have allowed a fee to claimant for legal services on the amount awarded by the Commission. Appellee argues that our decision is contrary to *Harber* v. *Shows*, 262 Ark. 161, and *Falden Ind. Wiring Co.* v. *Downs*, 255 Ark. 923. Where it was said that "a claim must exist before it can be controverted." But in *Falden*, it was the claimant who was in default, not the insurer, who acted with diligence. Additionally, there was a far greater element of uncertainty as to whether the claimant had sustained permanent partial disability. In *Harber*, the respondent notified the Commission immediately that the claim was accepted and the only reason a hearing was requested was to determine the dependency of the children.

We think the facts in the case before us are governed by

*Aluminum Company of America* v. *Henning,* 260 Ark. 699 and *Horseshoe Bend Builders* v. *Sosa,* 259 Ark. 267. In *Henning* the court held that a fee was allowable to claimant's attorney even though the insurer had advised the Commission within the time allowed that it accepted the claim, where the claimant had employed counsel as a result of an earlier denial by the insurer. Citing *Sosa, supra* and *International Paper Co.* v. *Remley,* 256 Ark. 7, the court rejected a mechanical approach in determining whether a claim was controverted and stated that controversion may be a question of fact:

> A principal, if not the primary, purpose of determining whether or not a claim is controverted is for the purpose of determining who is liable for the claimant's attorney's fees. Making an employer liable for the attorney's fees of the employee serves legitimate social purposes. Among them are discouraging oppressive delay in recognition of liability, deterring arbitrary or capricious denial of claims, and insuring the ability of necessitous claimants to obtain adequate and competent legal representation.

We pointed out in our initial opinion that we believe a delay of eight months occasioned by a physician chosen by the insurer ought to rest upon the insurer rather than the claimant. *Aluminum Company of America* v. *Henning, supra.* Rehearing denied.